**Eloise Toby MARCUS,**
**Plaintiff/Appellant,**

**v.**

**Shirley ROWLEY and San Diego Unified School District, Defendants/Appellees.**

No. 80–5222.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1982.

Decided Jan. 6, 1983.

Rex Perschbacher, USD Legal Clinics, San Diego, Cal., for plaintiff/appellant.

Ernestine Douglas Littlejohn, San Diego, Cal., for defendants/appellees.

Before POOLE and BOOCHEVER, Circuit Judges, and PFAELZER *, District Judge.

PFAELZER, District Judge:

This is an appeal from a dismissal on the merits of a suit for copyright infringement brought by a public school teacher who is the owner of a registered copyright to a booklet on cake decorating. The defendant, also a public school teacher, incorporated a substantial portion of the copyrighted work into a booklet which she prepared for use in her classes. Both parties moved the district court for summary judgment. The district court denied both motions and dismissed the action on the merits on the ground that defendant's copying of plaintiff's material constituted fair use. We reverse.

---

* Honorable Mariana R. Pfaelzer, United States District Judge for the Central District of California, sitting by designation.

## I. FACTUAL BACKGROUND

From September 1972 to June 1974, plaintiff, Eloise Toby Marcus was employed by the defendant, San Diego Unified School District ("District") as a teacher of home economics. Plaintiff resigned from the District's employ in 1974 and taught adult education classes intermittently from 1975 to 1980. Shortly after leaving her teaching position with the District, she wrote a booklet entitled "Cake Decorating Made Easy". Plaintiff's booklet consisted of thirty-five pages of which twenty-nine were her original creation. The remaining six pages consisted of material incorporated with the permission of the authors of the materials for which the authors were given appropriate credit.

Plaintiff properly registered the copyright for "Cake Decorating Made Easy" with the Register of Copyrights, and one hundred and twenty-five copies of the booklet were published in the spring of 1975. All of the copies of plaintiff's booklet contained a designation of copyright as evidenced by an encircled "c" followed by "1975 Eloise Marcus." This designation appeared on the table of contents page, the first page, and the page following the cover-title sheet.

Plaintiff sold all but six of the copies of her booklet for $2.00 each to the students in the adult education cake decorating classes which she taught. Plaintiff's profit was $1.00 on the sale of each booklet. Copies of plaintiff's booklet were never distributed to or sold by a bookstore or other outlet. Plaintiff never authorized anyone to copy or reproduce her booklet or any part of it.

Defendant, Shirley Rowley ("Rowley"), teaches food service career classes in the District. In the spring of 1975, she enrolled in one of plaintiff's cake decorating classes and purchased a copy of plaintiff's book. During the following summer, Rowley prepared a booklet entitled "Cake Decorating Learning Activity Package" ("LAP") for use in her food service career classes. The LAP consisted of twenty-four pages and was designed to be used by students who wished to study an optional section of her course devoted to cake decorating. Defendant had fifteen copies of the LAP made and put them in a file so that they would be available to her students. She used the LAP during the 1975, 1976 and 1977 school years. The trial court found that sixty of Rowley's two hundred twenty-five students elected to study cake decorating. The trial court further found that neither Rowley nor the District derived any profit from the LAP.

Rowley admits copying eleven of the twenty-four pages in her LAP from plaintiff's booklet. The eleven pages copied consisted of the supply list, icing recipes, three sheets dealing with color flow and mixing colors, four pages showing how to make and use a decorating bag, and two pages explaining how to make flowers and sugar molds. Four additional pages in defendant's LAP also appear in plaintiff's booklet, but these pages primarily contain information collected by and used with the permission of the Consumer Service Department of the American Institute of Baking.[1] Twenty pages of plaintiff's booklet were not included in Rowley's LAP.[2] Rowley did not give plaintiff credit for the eleven pages she copied, nor did she acknowledge plaintiff as the owner of a copyright with respect to those pages.

Plaintiff learned of Rowley's LAP in the summer of 1977 when a student in plaintiff's adult education class refused to purchase plaintiff's book. The student's son had obtained a copy of the LAP from Rowley's class. After examining Rowley's booklet, the student accused plaintiff of plagiarizing Rowley's work. Following these events, plaintiff made a claim of in-

---

**1.** The other nine pages of defendant's booklet consisted of the cover, the introduction, and seven pages of lesson plans.

**2.** These twenty pages consisted of the cover page, the table of contents, two pages on the technique of icing a cake, an explanation of how to make leaves, six pages of lettering designs, eight pages of seasonal designs, and one blank page for notes.

fringement against Rowley and the District. Both denied infringement and the plaintiff filed suit.

The parties filed cross-motions for summary judgment. The trial court denied both motions for summary judgment and dismissed the case on the merits.[3] The ground for dismissal was that the defendant's copying of the plaintiff's material for nonprofit educational purposes constituted fair use.

## II. THE APPLICABLE COPYRIGHT ACT

Congress revised the statutory law of copyright on October 19, 1976 in Public Law 94–553, 17 U.S.C. § 101 et seq. (1976). The revised Copyright Act provides that causes of action which arose prior to January 1, 1978 are governed by the Copyright Act in existence when the claim arose. 17 U.S.C. § 501, note, referring to Section 112 of Pub.L. 94–553. Walt Disney Productions v. Air Pirates, 581 F.2d 751, 754 (9th Cir.1978), cert. denied, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

Defendant compiled her LAP during the summer of 1975 and first made it available to her students during the 1975–1976 school year. Plaintiff was apprised of the possibility that her book had been copied in the summer of 1977. Although it is therefore clear that the revised Copyright Act does not govern this action, which version of the Act applies would not affect the outcome of this case since its resolution turns entirely on the application of the doctrine of fair use.

The doctrine of fair use was a judicially articulated concept until Congress recognized its importance and incorporated it into section 107 of the revised Copyright Act. The legislative history states that "[s]ection 107 is a restatement of this judicially developed doctrine—it neither enlarges nor changes it in any way." 122 Cong. Rec. 3144 (1976) (statement of Sen. Tunney). See H.R.Rep. No. 1476, 94th Cong., 2d Sess. 66, reprinted in 1976 U.S.Code Cong. & Ad.News 5659, 5680 [Hereinafter cited as H.R.Rep. (1976)]. Thus, the cases dealing with the doctrine of fair use under the common law and those under section 107 both give consideration to the same factors in analyzing whether the doctrine should apply. Section 107 codifies the factors developed under the prior case law.[4]

## III. THE DOCTRINE OF FAIR USE

Fair use is most often defined as the "privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner . . . ." Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303, 306 (2d Cir.1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). [citations omitted]. This doctrine was judicially created to "avoid rigid application" of the copyright laws when that application would defeat the law's original purpose which was the fostering of creativity. Iowa State University Research Foundation Inc. v. American Broadcasting Cos., 621 F.2d 57, 60 (2d Cir.1980). Because the doctrine was developed with a view to the introduction of flexibility and equity into the copyright laws, it has evolved in such a manner as to elude precise definition. Universal City Studios, Inc. v. Sony Corp., 659 F.2d 963, 969 (9th Cir.1981), cert. granted, —— U.S.

---

**3.** The procedural propriety of the trial judge's decision to dismiss the suit rather than to grant one party's motion for summary judgment is not considered here, since, in any event, the case was disposed of on the merits.

**4.** Section 107 states in pertinent part:
[T]he fair use of a copyrighted work . . . is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

——, 102 S.Ct. 2926, 73 L.Ed.2d 1328 (1982). It is, as Professor Nimmer has stated, a "most obscure doctrine." 3 *Nimmer on Copyright*, § 13.05 at 13–54.1 (1982). It is clear, however, that "assuming the applicable criteria are met, fair use can extend to the reproduction of copyrighted material for purposes of classroom teaching." H.R. Rep. No. 83, 90th Cong., 1st Sess. 33 (1967) [Hereinafter cited as H.R.Rep. (1967)]. Thus, a later House Report listed, among examples of fair use, the "reproduction by a teacher or student of a small part of a work to illustrate a lesson. . . ." H.R.Rep. (1976) at 65, U.S.Code Cong. & Admin.News 1976, p. 5679.

A. *The Purpose and Character of the Use*

 The first factor to be considered in determining the applicability of the doctrine of fair use is the purpose and character of the use, and specifically whether the use is of a commercial nature or is for a nonprofit educational purpose. It is uncontroverted that Rowley's use of the LAP was for a nonprofit educational purpose and that the LAP was distributed to students at no charge. These facts necessarily weigh in Rowley's favor. Nevertheless, a finding of a nonprofit educational purpose does not automatically compel a finding of fair use.[5]

This court has often articulated the principle that a finding that the alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used is strong indicia of no fair use. *Jartech, Inc. v. Clancy*, 666 F.2d 403 (1982); *Universal City Studios, Inc. v. Sony Corp.*, 659 F.2d 963 at 969. *See also Iowa State University v. American Broadcasting Cos.*, 621 F.2d 57 (the scope of fair use is constricted when the original and the copy serve the same function).

This same function test is addressed in the House of Representatives' 1967 Report, specifically in relation to classroom materials. The Report states that, with respect to the fair use doctrine, "[t]extbooks and other material prepared primarily for the school market would be less susceptible to reproduction for classroom use than material prepared for general public distribution." H.R.Rep. (1967) at 34.

 In this case, both plaintiff's and defendant's booklets were prepared for the purpose of teaching cake decorating, a fact which weighs against a finding of fair use.[6]

 Because fair use presupposes that the defendant has acted fairly and in good faith, the propriety of the defendant's conduct should also be weighed in analyzing

---

5. In *MacMillan v. King*, 223 F. 862 (D.Mass. 1914), the district court was presented with the question of fair use in an educational setting. In that case, plaintiff, a teacher of economics at Harvard University, had written a textbook entitled "Principles of Economics" for use in university economics courses.

 The defendant acted as a private tutor of a variety of subjects, including economics. Some of the defendant's students were using the plaintiff's textbook in their economics class and sought tutoring from the defendant in that course. In preparation for the tutoring sessions, defendant prepared a typewritten outline of the week's lessons. The outline was written to mirror the organization of plaintiff's textbook and often contained quotations from the textbook. None of the outlines were ever sold and the defendant claimed that the fee charged for the tutoring sessions was the same whether or not an outline was prepared for the session. The court found that plaintiff's copyright had been infringed due to "an appropriation [by the defendant] of the author's ideas and language more extensive than the copyright law per-

 mits." *Id.* at 866. With respect to the argument that the copying was permissible because it was done in furtherance of educational pursuits, the court stated:

 > If the above conclusions are right, I am unable to believe that the defendant's use of the outlines is any the less infringement of the copyright because he is a teacher, because he uses them in teaching the contents of the book, because he might lecture upon the contents of the book without infringing, or because his pupils might have taken their own notes of his lectures without infringing.

 *Id.* at 867.

6. Of course, this finding is not decisive on the issue of fair use. The fact that both works were used for the same intrinsic purpose carries less weight in a case such as this, because plainly the doctrine of fair use permits some copying of educational materials for classroom use. The critical issues here are the nature and the extent of defendant's copying.

the purpose and character of the use.[7] *See* 3 *Nimmer, supra,* § 13.05[A][1] at 13–61.

■ Here, there was no attempt by defendant to secure plaintiff's permission to copy the contents of her booklet or to credit plaintiff for the use of her material even though Rowley's copying was for the most part verbatim.[8] Rowley's conduct in this respect weighs against a finding of fair use.

### B. *The Nature of the Copyrighted Work*

■ The second factor to be weighed is the nature of the copyrighted work. In *Universal City Studios, Inc. v. Sony Corp.,* 659 F.2d 963, this court stated that analysis of this factor requires consideration of whether the work is "informational" or "creative." The court stated that "the scope of fair use is greater when informational type works, as opposed to more creative products, are involved." *Id.* at 972. Here, plaintiff's booklet involved both informational and creative aspects. Some pages in her booklet undoubtedly contained information available in other cake decorating books or in recipe books. Other parts of her booklet contained creative hints she derived from her own experiences or ideas; certainly the manner in which plaintiff assembled her book represented a creative expression. Thus, on balance, it does not appear that analysis of this factor is of any real assistance in reaching a conclusion as to applicability of fair use.

### C. *The Amount and Substantiality of the Portion Used*

The third factor to be considered is the amount and substantiality of the portion used in relation to the copyrighted work as a whole. Any conclusion with respect to this factor requires analysis of both the quantity and quality of the alleged infringement. *See* 3 *Nimmer, supra,* § 13.-05[A][3] at 13–64.

With respect to this factor, this court has long maintained the view that wholesale copying of copyrighted material precludes application of the fair use doctrine. *Benny v. Loew's, Inc.,* 239 F.2d 532 (9th Cir.1956), *aff'd by an equally divided Court sub nom. Columbia Broadcasting System v. Loew's, Inc.,* 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958). *See also Walt Disney Productions v. Air Pirates,* 581 F.2d 751 at 758, and *Universal City Studios, Inc. v. Sony Corp.,* 659 F.2d 963 at 973. Other courts are in accord with this principle, and two courts have specifically addressed the issue in relation to copying for educational purposes.

*Wihtol v. Crow,* 309 F.2d 777 (8th Cir. 1962), involved alleged infringement by the defendant, a school teacher and church choir director, of a hymn entitled "My God and I". The defendant Crow incorporated plaintiff's original piano and solo voice composition into an arrangement for his choirs. He made forty-eight copies of his arrangement and had the piece performed on two occasions: once by the high school choir at the school chapel, and once in church on Sunday. The music was identified as "arranged Nelson E. Crow", but no reference was made to plaintiff as the original composer. The Eighth Circuit affirmed the trial court's finding that Crow had infringed

---

7. In *Schroeder v. William Morrow & Co.,* 566 F.2d 3 (7th Cir.1977), the compilers of the allegedly infringing garden catalogue had copied names and addresses of florists and gardeners from plaintiff's similar compilation. Although the copied information was easily accessible from the telephone book, defendants did not check or verify plaintiff's list. The court found that defendants' short-cut saved them a lot of time and enabled them to meet a deadline. Although the court was not addressing the fair use issue at this point, it stated that the "appropriation of the fruits of another's labor and skill in order to publish a rival work without the expenditure of the time and effort required for independently arrived at results is copyright

infringement." *Id.* at 6. Later, the court explicitly rejected the fair use defense. *See also Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1880) (the use of the same words or illustrations in a book teaching an art is undoubtedly infringement) and *Runge v. Lee,* 441 F.2d 579 (9th Cir.1971), *cert. denied,* 404 U.S. 887, 92 S.Ct. 197, 30 L.Ed.2d 169 (1971).

8. Attribution is, of course, but one factor. Moreover, acknowledgement of a source does not excuse infringement when the other factors listed in section 107 are present. *See, e.g., Toksvig v. Bruce Publishing Co.,* 181 F.2d 664 (7th Cir.1950).

plaintiff's copyright and in addressing the issue of whether Crow's copying constituted fair use, the court stated that "[w]hatever may be the breadth of the doctrine of 'fair use', it is not conceivable to us that the copying of all, or substantially all, of a copyrighted song can be held to be a 'fair use' merely because the infringer had no intent to infringe." *Id.* at 780.

The court in *Encyclopaedia Britannica Educational Corp. v. Crooks,* 447 F.Supp. 243 (W.D.N.Y.1978), also considered the issue of fair use in the educational context. In that case, three corporations which produced educational motion picture films sued the Board of Cooperative Educational Services of Erie County ("BOCES") for videotaping several of plaintiffs' copyrighted films without permission. BOCES distributed the copied films to schools for delayed student viewing. Defendants' fair use defense was rejected on the ground that although defendants were involved in noncommercial copying to promote science and education, the taping of entire copyrighted films was too excessive for the fair use defense to apply. *Id.* at 251. *See also Quinto v. Legal Times of Washington, Inc.,* 506 F.Supp. 554, 560 (D.D.C.1981).[9]

In this case, almost 50% of defendant's LAP was a verbatim copy of plaintiff's booklet and that 50% contained virtually all of the substance of defendant's book. Defendant copied the explanations of how to make the decorating bag, how to mix colors, and how to make various decorations as well as the icing recipes. In fact, the only substantive pages of plaintiff's booklet which defendant did not put into her booklet were hints on how to ice a cake and an explanation of how to make leaves. Defendant argues that it was fair to copy plaintiff's booklet because the booklet contained only facts which were in the public domain. Even if it were true that plaintiff's book contained only facts, this argument fails because defendant engaged in virtually verbatim copying. Defendant's LAP could have been a photocopy of plaintiff's booklet but for the fact that defendant retyped plaintiff's material. This case presents a clear example of both substantial quantitative and qualitative copying.

## D. The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work

The final factor to be considered with respect to the fair use defense is the effect which the allegedly infringing use had on the potential market for or value of the copyrighted work. The 1967 House Report points out that this factor is often seen as the most important criterion of fair use, but also warned that it "must almost always be judged in conjunction with the other three criteria." H.R.Rep. (1967) at 35. The Report explains that "a use which supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement." *Id.* Here, despite the fact that at least one of plaintiff's students refused to purchase her booklet as a result of defendant's copying, the trial court found that it was unable to conclude that the defendant's copying had any effect on the market for the plaintiff's booklet. Even assuming that the trial court's finding was not erroneous, and that that finding must be accepted and weighed in Rowley's favor, *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1166 (9th Cir.1977), it does not alter our conclusion. The mere absence of measurable pecuniary damage does not require a finding of fair use. *Universal City Studios, Inc. v. Sony Corp.,* 659 F.2d 963 at 974. Fair use is to be determined by a consideration of all of the evidence in the case. *Mathews Conveyor Co. v. Palmer-Bee Co.,* 135 F.2d 73, 85 (6th Cir.1943). Thus, despite the trial court's finding, we conclude that the factors analyzed weigh decisively in favor of the conclusion of no fair use. This conclusion is in

9. *Contra, Williams & Wilkins Co. v. United States,* 487 F.2d 1345, 1352–1354 (Ct.Cl.1973), *aff'd,* 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975) (the existence of verbatim copying was not dispositive when the conduct encouraged scientific progress and did not cause plaintiff substantial monetary harm).

harmony with the Congressional guidelines which, as a final point, also merit consideration with respect to the issue of fair use in an educational context.

## IV. THE CONGRESSIONAL GUIDELINES

■ The question of how much copying for classroom use is permissible was of such major concern to Congress that, although it did not include a section on the subject in the revised Act, it approved a set of guidelines with respect to it. The guidelines represent the Congressional Committees' view of what constitutes fair use under the traditional judicial doctrine developed in the case law. Conf.Rep. No. 1733, 94th Cong., 2d Sess. 70, *reprinted in* 1976 U.S. Cong. & Ad.News 5810, 5811. The guidelines were designed to give teachers direction as to the extent of permissible copying and to eliminate some of the doubt which had previously existed in this area of the copyright laws. The guidelines were intended to represent minimum standards of fair use. 3 *Nimmer, supra,* § 13.05[E][3] at 13–75. Thus, while they are not controlling on the court, they are instructive on the issue of fair use in the context of this case.

The guidelines relating to multiple copies for classroom use indicate that such copying is permissible if three tests are met. First, the copying must meet the test of "brevity" and "spontaniety." "Brevity" is defined, for prose, as "[e]ither a complete article, story or essay of less than 2,500 words, or an excerpt from any prose work of not more than 1,000 words or . . . 10% of the work, whichever is less . . . ." H.R.Rep. (1976) at 68, U.S.Code Cong. & Admin.News 1976, p. 5682. Rowley's copying would not be permissible under either of these tests.

The guidelines also provide a separate definition of "brevity" for "special works." "Special works" are works "which often combine language with illustrations and which are intended sometimes for children and at other times for a more general audience." *Id.* at 69. Plaintiff's booklet arguably would fall into this category. The

guidelines provide that, notwithstanding the guidelines for prose, " 'special works' may not be reproduced in their entirety; however, an excerpt comprising not more than two of the published pages of such special work and containing not more than 10% of the words found in the text thereof, may be reproduced." *Id.* Rowley's copying would not be permissible under this test.

Under the guidelines, "spontaniety" requires that "[t]he copying is at the instance and inspiration of the individual teacher, and . . . [t]he inspiration and decision to use the work and the moment of its use for maximum teaching effectiveness are so close in time that it would be unreasonable to expect a timely reply to a request for permission." *Id.* Defendant compiled her LAP during the summer of 1975 and first used it in her classes during the 1975–76 school year. She also used the LAP for the following two school years. Rowley's copying would not meet this requirement either.

The second test under the guidelines is that of "cumulative effect". *Id.* This test requires that the copied material be for only one course in the school. This aspect of the test would probably be met on these facts. The test also limits the number of pieces which may be copied from the same author and the number of times a teacher may make multiple copies for one course during one term. These latter two tests also appear to be met. The facts indicate that defendant copied only one piece of plaintiff's work. Defendant's conduct, therefore, would satisfy the second test under the guidelines.

The third test requires that each copy include a notice of copyright. As stated, defendant's LAP did not acknowledge plaintiff's authorship or copyright and therefore would not meet this test.

In conclusion, it appears that Rowley's copying would not qualify as fair use under the guidelines.

We conclude that the fair use doctrine does not apply to these facts as that doctrine has been articulated in the common law, in section 107 of the revised Copyright

Act, or in the special guidelines approved by Congress for nonprofit educational institutions. Rowley's LAP work, which was used for the same purpose as plaintiff's booklet, was quantitatively and qualitatively a substantial copy of plaintiff's booklet with no credit given to plaintiff. Under these circumstances, neither the fact that the defendant used the plaintiff's booklet for nonprofit educational purposes nor the fact that plaintiff suffered no pecuniary damage as a result of Rowley's copying supports a finding of fair use.

The order of the district court is reversed, summary judgment is entered for the plaintiff, and the case is remanded for a determination of damages pursuant to the provisions of the Copyright Act.

REVERSED and REMANDED.