ORIGINAL APPALACHIAN
ARTWORKS, INC., a
Georgia corporation

v.

TOPPS CHEWING GUM, INC., a New
York corporation.

Civ. A. No. C86–483A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 29, 1986.

William H. Needle, Stanley F. Birch, Jr., Vaughan, Roach, Davis, Birch & Murphy, Atlanta, Ga., for plaintiff.

Robert Pennington, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., Daniel Carroll, Shea & Gould, New York City, Rodgers Lunsford, Atlanta, Ga., for defendant.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled action is one for copyright infringement, trademark infringement, and unfair competition, brought pursuant to the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*, the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, the Lanham Act, 15 U.S.C. § 1125, and state laws governing unfair competition. The plaintiff Original Appalachian Artworks, Inc. (OAA) was incorporated in 1978 and manufactures and markets soft-sculptured dolls created by Xavier Roberts. On June 1, 1979, copyright registration No. VA 35–804 was issued for plaintiff's dolls "The Little People." Since July 1982, plaintiff has marketed these dolls under the trademark "Cabbage Patch Kids." Over forty million Cabbage Patch Kids Dolls have been sold to date.

Defendant Topps Chewing Gum, Inc. (Topps) was founded in 1938. Over the last fifty years it has produced various entertainment products and novelties designed for children, perhaps most notably Bazooka Bubble Gum and baseball trading cards. In November 1984, Topps filed for the registration of the trademark "Garbage Pail Kids." In May 1985, defendant began distributing the first series of Garbage Pail Kids stickers/cards. The Garbage Pail Kids' stickers derisively depict dolls with features similar to Cabbage Patch Kids dolls in rude, violent and frequently noxious settings. The cards became very popular in early 1986 and Topps has recently begun licensing Garbage Pail Kids products such as T-shirts, school notebooks, balloons, etc. More than 800 million stickers have been sold.

The matter is presently before the court on the plaintiff's motion for a preliminary injunction on the grounds that "unless defendant is so enjoined, it will continue its

unfair and infringing acts and that such acts will result in irreparable injury and damage to plaintiff for which there is no adequate remedy at law." Plaintiff's Motion for Preliminary Injunction (filed May 23, 1986).

■ The Copyright and Trademark acts as well as various Georgia statutes specifically authorize a federal court to grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement. *See* 17 U.S.C. § 502(a) (injunctions in copyright cases); 15 U.S.C. § 1116 (injunctions in federal trademark and false designation of origin cases); O.C.G.A. §§ 10–1–373(a), 10–1–399(a) (injunctions under Georgia Deceptive Trade Practices Act and Fair Business Practices Act); O.C.G.A. § 10–1–451(b) (injunction under Georgia anti-dilution statute). Nevertheless, in copyright, trademark, and unfair competition cases, as in most others, a plaintiff seeking preliminary injunctive relief must demonstrate:

(1) a substantial likelihood of success on the merits at trial;

(2) an immediate and real threat of irreparable injury;

(3) that the harm to the plaintiff without such injunction outweighs the harm to the defendant emanating from the granting of such injunction; and

(4) that the granting of the injunction is consistent with the interests of the public.

*Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184, 1187 (5th Cir.1979); *Scientific Applications, Inc. v. Energy Conservation Corp. of America*, 436 F.Supp. 354, 357 (N.D.Ga.1977). The court turns to the issue of whether the plaintiff can satisfy these requirements.

## I. *Likelihood of Success*

A. Copyright Claim:

■ In order to prove a prima facie claim of copyright infringement a plaintiff must demonstrate (1) that he owns a valid copyright in the work and (2) copying by the defendant. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir.1982). The defendant does not seriously contest, and the court finds, that the plaintiff owns valid existing copyrights in the underlying and derivative Cabbage Patch Kids products. *Id.* See, e.g., copyright registration nos. VA 35–804, 141–801, 150–(809–812). This automatically establishes that plaintiff has the exclusive right to prepare derivative items based on the copyrighted work. 17 U.S.C. § 106(2).

The court also finds that the plaintiff has satisfied the second requirement, copying by the defendant. Defendant's brief correctly states that "copying must be shown by either: (a) proof of direct copying; or (b) proof of access to the copyrighted work and a substantial similarity between the copyrighted work and the defendant's work." Defendant's Brief in Opposition to Motion for a Preliminary Injunction 26 (filed June 18, 1986). *See Toy Loft*, 684 F.2d at 829; *Central Tel. Co. of Va. v. Johnson Publishing Co., Inc.*, 526 F.Supp. 838, 843 (D.Colo.1981). *See generally* 3 M. Nimmer, Nimmer on Copyright §§ 12.-11[D], 13.01[B], at 12–82 to 12–84.1, 13–6 to 13–8 (1963 & Supp. 1985). "Since there is seldom direct evidence of 'copying,' the plaintiff generally proves this element by showing that the person who composed the defendant's work had access to the copyrighted work and that defendant's work is substantially similar to the plaintiff's." *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 113 (5th Cir.1978). However, in this case there is substantial evidence of direct intentional copying sufficient to carry plaintiff's burden. The defendant's contentions that the Garbage Pail Kids were not based upon Cabbage Patch Kids but were modeled after cute dolls such as Strawberry Shortcake, Rainbow Brite, Barbie and Garfield are not credible. The court finds that John Pound, the artist who designed a majority of the Garbage Pail Kid stickers, purposefully copied substantial amounts of Cabbage Patch Kid features for the defendant's stickers, as he had been instructed to do by Leonard Brown, creative director for Topps. Mr. Brown either directed or suggested that

Pound make the "Adam Bomb" character, depicted on the wrapper of all of the Garbage Pail Kids stickers packages, look like the Cabbage Patch dolls.

■ The defendant next argues that the Garbage Pail Kids are a parody or satire of the Cabbage Patch Kids and are therefore protected by the "fair use" defense to copyright infringement. 17 U.S.C. § 107. The plaintiff denies that the defendant has a valid fair use defense. On a motion for preliminary injunction, plaintiff must demonstrate a likelihood of success on the merits at trial as to asserted affirmative defenses, as well as to the elements of plaintiff's prima facie case. *Metro-Goldwyn-Mayer, Inc. (MGM) v. Showcase Atlanta Cooperative Productions, Inc.,* 479 F.Supp. 351, 355 (N.D.Ga.1979).

Section 107 of the Copyright Act of 1976 states that even if a party has copied another's work, the "fair use of a copyrighted work....for purposes such as criticism, comment, news reporting, teaching ..., scholarship, or research, is not an infringement of copyright." Although the fair use provision does not mention parody of satire, courts have recognized that parody may be protected under § 107. *See Warner Bros., Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231 (2d Cir.1983); *Scoreboard Posters, supra; Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

It is a fine line, however, between parody and piracy, and in assessing whether defendant has crossed that boundary the courts examine several factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. While these factors are not exhaustive, they do provide a framework for the court's analysis of the defendant's affirmative defense. *See* 3 M. Nimmer, *supra,* § 13.05[A], at 13–65 to 13–66.

The first factor to be considered in determining the applicability of fair use is the purpose and character of that use and "specifically whether the use is of a commercial nature or is for a nonprofit educational purpose." *Marcus v. Rowley,* 695 F.2d 1171, 1175 (9th Cir.1983). The Supreme Court has stated that "commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984). *See also Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985).

Here the primary purpose behind defendant's parody is not an effort to make a social comment but is an attempt to make money. *Cf. MGM,* 479 F.Supp. at 357 (to be fair use parody must make critical comment). The Garbage Pail Kid stickers is one of the more profitable ventures of Topps' business history. Neither are the Garbage Pail Kid stickers merely one of a series of spoofs of various different products, as defendant has produced in the past, nor a single cartoon or editorial in a broader satirical product such as Mad Magazine. The basic concept behind the defendant's stickers is aimed at capitalizing on the Cabbage Patch craze. As was the case in *D.C. Comics, Inc. v. Unlimited Monkey Business, Inc.,* 598 F.Supp. 110 (N.D.Ga.1984), where the court held that defendant was not entitled to rely upon the fair use defense for their characters Super Stud and Wonder Wench paroding Superman and Wonder Woman, "Defendants do not engage in critical comment that constitutes part of the 'free flow of ideas' underlying the doctrine of fair use. Instead, they seek to augment the commercial value of their own property by creating new, and detrimental, associations with plaintiff's property." *Id.* at 118. (footnote omitted)

The defendant has issued three series of Garbage Pail stickers to date and is preparing to release a fourth and fifth. With the recent licensing expansion of Garbage Pail Kid items, defendant's products have begun to compete in many of the same markets as Cabbage Patch Kid products.

In other infringement cases, the commercial nature of the use has been found by the Eleventh Circuit to be "especially significant, if not determinative" and "militates quite strongly against a finding of fair use." *Pacific and Southern Co., Inc. v. Duncan*, 744 F.2d 1490, 1496 (11th Cir. 1984). A similar analysis is appropriate here.

The fourth fair use factor—the effect upon the potential market—is closely related to the first factor. Some courts consider this factor to be the most significant. *See Traingle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1177 (5th Cir.1980); *Marcus*, 695 F.2d at 1177. The evidence as to this issue also undercuts any fair use defense by the defendant.

Both parties in this action recognize that the primary market for Cabbage Patch Kid and Garbage Pail Kid products is children seven to twelve years old. Defendant argues that there has been no showing of any detrimental effect on the plaintiff's market by defendant's commercial competition, but "the mere absence of measurable pecuniary damage does not require a finding of fair use." *Marcus*, 695 F.2d at 1177. There is a presumption that commercial use of a copyrighted product naturally produces harmful effects. *Sony Corp.*, 104 S.Ct. at 793. Both sides presented evidence on whether there might be any harm to plaintiff by defendant's items. The court finds the testimony of plaintiff's expert, Mr. Gerrold Robinson, President of the Licensing Industry Merchandising Association, to be particularly persuasive and credible. Mr. Robinson testified that the Garbage Pail Kids' stickers and licensing program will have a serious negative impact on the Cabbage Patch Kids program. In *Harper & Row, supra*, the Supreme

Court stated that in order to negate a fair use defense the plaintiff "need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'" 105 S.Ct. at 2234-35 (emphasis in original). The court finds that Garbage Pail Kids are likely to harm the potential market for or the value of the Cabbage Patch Kid products.

Regarding the second factor, the nature of the copyrighted work, the plaintiff's copyrighted items involved in this case were devoted to strictly commercial uses. Generally, the scope of fair use is narrower when creative or entertaining type works are involved, such as the plaintiff's as opposed to informational type works. *See* 3 M. Nimmer, *supra*, § 13.05[A][2], at 13–73 to 13–75. There is no dispute that the plaintiff's creations consist of original, imaginative elements, that the plaintiff has invested a considerable amount of money in establishing an enviable reputation for attractive, quality products, and that these copyrighted works contribute to the wholesome perception that the plaintiff enjoys among consumers.

Citing cases such as *Walt Disney Productions, supra*, the plaintiff contends that the defendant has copied more than was necessary to achieve the desired effect and that, therefore, under the third factor, the amount of copying, the defendant's conduct is not protected under the fair use doctrine. While there is some support for this position, *see id.*, 581 F.2d at 757–58, the issue of whether the defendant may or may not have used more than was necessary to accomplish the desired effect does not substantially alter the court's analysis in this case and compel a finding of infringement. *See also Fisher v. Dees*, 794 F.2d 432 (9th Cir.1986) (copying for parodic purposes by its very nature not *de minimis*). On the other hand, the fact that the Garbage Pail Kids, while endowed with the Cabbage Patch Kids' general appearance, display traits inconsistent with the Cabbage Patch Kids' character does not defeat the in-

fringement action. *See Warner Bros.,* 720 F.2d at 243.

After assessing all the above factors, the court finds that defendant's use of plaintiff's copyrighted works is not protected under the fair use doctrine. In *Fisher v. Dees, supra,* relied upon by the defendant, the Ninth Circuit concluded that the parody "When Sonny Sniffs Glue" of the song "When Sunny Gets Blue" was protected by the fair use defense. Using primarily an economic analysis, the court found that the take-off (one cut on an album by the defendant) was not an attempt to capitalize financially on the plaintiff's original work, did not have any cognizable economic effect on the original, and was entitled to greater leeway because the nature of the medium was a song rather than graphic arts. The instant case, on the other hand, is basically dissimilar and distinguishable. Here, the defendant intentionally capitalized on plaintiff's work for commercial gain; there was evidence of potential economic impact; and the case involves the graphic imaginative arts where "close copying [is] impermissible." *Id.* In *Walt Disney Productions, supra,* a case more analogous to this action, the Ninth Circuit denied defendant's fair use defense where Disney cartoon characters were placed in incongruous settings and engaged in activities antithetical to accepted Disney values. *See also D.C. Comics,* 598 F.Supp. at 118–19. A similar holding is appropriate in this case.

Furthermore, the doctrine of fair use presupposes that the defendant acted in good faith. *Harper & Row,* 105 S.Ct. at 2232; *Marcus,* 695 F.2d 1171 at 1175; *Radji v. Khakbaz,* 607 F.Supp. 1296, 1300 (D.D. C.1985); *Roy Export Co. Establishment of Vaduz, Liechtenstein, Black, Inc. v. Columbia Broadcastinig System, Inc.,* 503 F.Supp. 1137 (S.D.N.Y.1980), *aff'd,* 672 F.2d 1095 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The defendant's intentional copying with the purpose of appropriating and using the reputation of the plaintiff and reaping the benefit of the demand for plaintiff's prod-

uct is an element of bad faith under the facts of this case. The evidence demonstrates that defendant deliberately traded on plaintiff's good will, that it continuously appropriated plaintiff's copyrighted products for its own commercial gain, and that it is intentionally expanding in plaintiff's "potential market." *See Duncan,* 744 F.2d at 1496; *see also Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 151 n. 2 (5th Cir.1985). The court notes that defendant's attempts to obtain a sticker license from the plaintiff is additional evidence of defendant's familiarity with the plaintiff's product and of its awareness of plaintiff's position and good will in the market.

The court finds the plaintiff has sufficiently demonstrated a likelihood of success on the merits as to its copyright infringement claim.

### B. Trademark and Unfair Competition Claims

Plaintiff contends that the trade name "Garbage Pail Kids" infringes upon its trademark "Cabbage Patch Kids." Plaintiff also asserts allegations of unfair competition under the Lanham Act, 15 U.S.C. § 1125, and common law.

As has often been observed, the law of trademark infringement is but a part of the law of unfair competition. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 839 (11th Cir.1983); *American Footwear Corp. v. General Footwear Co., Ltd.,* 609 F.2d 655, 664 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The legal standard for federal and common law trademark and unfair competition claims is essentially the same. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.1980), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980); *American Footwear,* 609 F.2d at 664; *Rolls-Royce v. Motors, Ltd. v. A & A Fiberglass, Inc.,* 428 F.Supp. 689, 697 (N.D.Ga.1977). The court will consider plaintiff's trademark and unfair competition claims in conjunction, except where indicated.

In order to establish infringement under the trademark laws, the plaintiff must show the likelihood of confusion of some accused mark with its registered mark. 15 U.S.C. § 1114(1)(a). *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496 (5th Cir.1979), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). As originally drafted, § 1114(1)(a) required a finding of confusion or deception by "purchasers as to the source of origin of such goods or services." This clarifying language was eliminated in 1962. *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 594 (5th Cir.1985); *Rolls-Royce*, 428 F.Supp. at 694 n. 10. The Eleventh and Fifth Circuits have interpreted § 1114(1) as presently requiring the plaintiff to demonstrate a likelihood of consumer confusion as to either origin, approval, endorsement or other association of the defendant's mark with the plaintiff. *See Supreme Assembly, Order of Rainbow for Girls v. J.H. Ray Jewelry Co.*, 676 F.2d 1079, 1082 (5th Cir.1982); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 388 (5th Cir.1977).

In determining whether such a likelihood of confusion exists, courts examine several factors:

(a) type of trademark, that is, the strength of the prior owner's mark;

(b) degree of similarity between the two marks;

(c) similarity between the two products;

(d) identity of retail outlets and purchasers;

(e) identity of advertising media utilized;

(f) defendant's intent;

(g) actual confusion.

*See Jellibeans*, 716 F.2d at 840; *Fuji Photo*, 754 F.2d at 595. The court will address each of these factors in turn.

*Type of Trademark:* Strong marks are more likely to be protected than weak marks. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir.1983). The defendant does not challenge the validity of the plaintiff's registered trademarks, and the court finds that the plaintiff's marks are strong, distinctive, and well-known designations for plaintiff's goods.

*Similarity of Design:* As will be discussed later, the evidence demonstrates that defendant intended that its mark Garbage Pail Kids be similar in design to plaintiff's marks. While there are differences between the marks, their overall similarity is clearly apparent in many respects. Both product names are displayed in an arc against a white cloud background. Cabbage Patch Kids and Garbage Pail Kids both contain three words. Each mark has the same number of syllables with the same stress pattern. The "C" of Cabbage and the "G" of Garbage are phonetically similar in that they are both velar plosives. Pail and Patch both begin with the letter "P". The last word in both marks is identical. Such a sight, sound, and meaning similarity between a plaintiff's and a defendant's marks has often resulted in a finding that the two marks are likely to confuse. *See generally* 2 J.T. McCarthy, Trademarks and Unfair Competition § 23:4 *passim* (1973).

*Similarity of Product:* The parties' primary products, dolls and stickers, are not similar. However, defendant's licensed products are similar and can compete with plaintiff's licensed items.

*Identity of Retail Outlets and Purchasers:* The parties' respective retail outlets are distinct. Plaintiff's dolls and accessories are sold directly at "babyland hospitals" and at toy or retail stores. Defendant's cards are primarily distributed in grocery or convenience stores. The evidence clearly establishes that the purchasers, or at least a substantial part of the market, for both the plaintiff's and defendant's goods are children ages seven to twelve. *See generally Freedom Savings and Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir.1985) (sophistication of buyer an important factor).

*Identity of Advertising Media:* The record does not disclose any identity of advertising between the plaintiff and defendant.

*Defendant's Intent:* If a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity. *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 506 (5th Cir.1980). *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.,* 618 F.2d 950, 954 (2d Cir.1980) ("if there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded"). The evidence in this case as to the tradenames even more strongly suggests that defendant intended to copy plaintiff's trademark and follow it as closely as possible.

*Actual confusion:* The best evidence of likelihood of confusion is provided by evidence of actual confusion. *Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44, 46 (5th Cir. 1975). The evidence of actual confusion in this case is minimal. Such evidence, however, is not essential to a finding of likelihood of confusion. *Id.* Further, the quantum of evidence needed to show actual confusion is relatively small. *Jellibeans,* 716 F.2d at 845. Plaintiff introduced live testimony as well as documentary evidence purporting to show actual confusion. Plaintiff also introduced a survey which tended to show that people associated defendant's mark with the plaintiff's. Children of ages seven through twelve associated the two marks to a greater extent than adults. The survey, along with plaintiff's other evidence, demonstrated that there may be some actual confusion among consumers about the relationship between the parties' products.

In *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir.1979), addressing a claim under the Lanham Act, the Second Circuit discussed whether the public was likely to confuse the uniforms in defendant's film "Debbie Does Dallas" with the plaintiff's uniforms. The court stated:

Defendants assert that the Lanham Act requires confusion as to the origin of the film, and they contend that no reasonable person would believe that the film originated with plaintiff. Appellants read the confusion requirement too narrowly. In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market.... The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement. In the instant case, the uniform depicted in "Debbie Does Dallas" unquestionably brings to mind the Dallas Cowboys Cheerleaders. Indeed, it is hard to believe that anyone who had seen defendants' sexually depraved film could ever thereafter disassociate it from plaintiff's cheerleaders. This association results in confusion which has "a tendency to impugn [plaintiff's services] and injure plaintiff's business reputation...." (citations omitted)

*Id.* at 205–06; *see also Chemical Corp. of America v. Anheuser-Busch, Inc.,* 306 F.2d 433 (5th Cir.1962), *cert. denied,* 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963) ("Where there's life, there's bugs" unfairly competed with "Where there's life, there's Bud"); *Coca-Cola Co. v. Gemini Rising, Inc.,* 346 F.Supp. 1183 (E.D.N.Y. 1972) ("Enjoy Cocaine" for "Enjoy Coca-Cola" held likely to confuse). The same analogies are applicable to plaintiff's unfair competition claim in this case.

■ Weighing all of the factors and evidence, the court concludes that the plaintiff has made a sufficient showing of likelihood of confusion. The plaintiff's marks are strong and defendant intentionally patterned its mark after the plaintiff to take advantage of the strength of plaintiff's mark. While there are differences in the parties' products and retail outlets, the purchasers of the parties' items are often substantially similar. The evidence also suggests that young children were more likely to be confused than others. As one court has observed:

§ 43(a) [of the Lanham Act] does not require that defendant's products be in direct competition with the plaintiff. Plaintiff has the right to limit the application of his mark to his goods, regardless of whether they compete with the defendant's goods. The owner of a service mark or trademark basically has the right, as far as commercial exploitation is concerned, to have the mark associated with *his* services and goods, rather than with the services or goods of another person.

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366, 374 (S.D.N.Y.), *aff'd*, 604 F.2d 200 (2d Cir.1979); *see also Blue Bell, Inc. v. Ruesman*, 335 F.Supp. 236, 238 (N.D.Ga.1971). The evidence indicates that defendant's marks are being associated with the plaintiff's and this association adversely affects plaintiff's mark. *See also D.C. Comics*, 598 F.Supp. at 116 (trading on the good will of the marks and altering the denotation and connotation of marks violates § 43(a) of Lanham Act).

For all the foregoing reasons, the court finds that there is a likelihood of confusion as to origin, approval, endorsement or other association of the Garbage Pail Kids' products and mark with the plaintiff. Plaintiff has accordingly demonstrated a substantial likelihood of success on its trademark and unfair competition claims.

### C. Georgia Claims

Plaintiff asserts various violations of Georgia common and statutory law specifically under the Georgia Uniform Deceptive Trade Practices Act, Georgia Fair Business Practices Act, and the Georgia Anti-Dilution statute. To the extent that OAA asserts rights equivalent to those encompassed by federal copyright law, its claim is preempted by 17 U.S.C. § 301(a). *See Original Appalachian Artworks, Inc. v. Blue Box Factory, Ltd.*, 577 F.Supp. 625, 631 (S.D.N.Y.1983).

The majority of the remaining state law claims are similar to the unfair competition claim and are governed by the "likelihood of confusion" test discussed earlier. *See, e.g., Rolls-Royce*, 428 F.Supp. at 698–99 (Uniform Deceptive Trade Practices Act decided under likelihood of confusion between goods standard). As the court has held in favor of the plaintiff on the federal claims in this area, and plaintiff would not be entitled to any additional relief under these theories, the court does not address the merits of these issues in this order.

Finally, the court turns to plaintiff's claim under the Georgia anti-dilution statute. O.C.G.A. § 10–1–451(b). Plaintiff's dilution claim is distinct from its copyright and trademark claims as "dilution occurs when ...the uniqueness of the plaintiff's marks as the designation for its products is diminished by the defendant's unauthorized use of these marks, 'notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.'" *Pillsbury Co. v. Milky Way Productions, Inc.*, 215 U.S.P.Q. 124, 135 (N.D.Ga.1981); *see Warner Bros.*, 720 F.2d at 248; *cf. Community Federal Savings and Loan Ass'n v. Orondorff*, 678 F.2d 1034, 1036 nn. 6–7 (11th Cir.1982).

Courts and commentators have stated that dilution can take two forms. *See generally* 2 J.T. McCarthy, *supra*, § 24.13 *passim*. The first is a "blurring" or "whittling down" of the distinctiveness of a mark. This can occur where the public sees the mark used widely on all kinds of products. The second type of dilution is tarnishment which occurs when a defendant uses the same or similar marks in a way that creates an undesirable, unwholesome, or unsavory mental association with the plaintiff's mark. *Id.; see also Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 625 F.Supp. 48, 56–57 (D.N.M.1985). The latter type of dilution is involved in this action.

█ In order to prevail under such a dilution claim, the plaintiff needs to show that the marks in question are similar, *see Community Federal*, 678 F.2d at 1036–37, and that "the contested use is likely to injure [plaintiff's] commercial reputation or dilute the distinctive quality of its marks."

*Pillsbury,* 215 U.S.P.Q. at 135. The plaintiff has satisfied these requirements. Defendant's position throughout these proceedings clearly indicates that "defendant is borrowing plaintiff's good will to make it the butt of a joke." 2 J.T. McCarthy, *supra,* § 24:15, at 165 (stating such a result is usually the "hallmark of the dilution doctrine"). There was also testimony by Mr. Robinson that any association of Garbage Pail Kids with Cabbage Patch Kids would disparage the wholesome image plaintiff attempts to present for its products. *See L.L. Bean, Inc. v. Drake Publishing, Inc.,* 625 F.Supp. 1531, 1536–38 (D.Me.1986) (analogous evidence demonstrating tarnishment warranted injunction under similar anti-dilution statute). The court finds that there is more than sufficient evidence that tarnishment exists such that plaintiff is substantially likely to prevail on the merits as to its anti-dilution claim.

## II. *Other Factors for a Preliminary Injunction*

If the plaintiff demonstrates a substantial likelihood of success on the merits in a copyright or trademark action, the plaintiff is entitled to a preliminary injunction. *See, e.g., Scoreboard Posters,* 600 F.2d at 1188. Courts rarely discuss in detail the other factors for a preliminary injunction—irreparable injury, harm to the defendant and the public interest—as courts will protect the plaintiff once an infringement is demonstrated.

■ In copyright or trademark claims, if a prima facie case of infringement exists, for injunctive purposes, injury is normally presumed. *See Wainwright Securities, Inc. v. Wall St. Transcript Corp.,* 558 F.2d 91 (2d Cir.), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1977); *P. Daussa Corp. v. Sutton Cosmetics (P.R.), Inc.,* 462 F.2d 134 (2d Cir.1972); *Universal City Studios, Inc. v. Casey & Casey, Inc.,* 622 F.Supp. 201, 204 (S.D.Fla.1985). Defendant asserts that irreparable injury should not be presumed in this case as plaintiff delayed in bringing this action. *See, e.g., GTE Corp. v. Williams,* 731 F.2d 676 (10th Cir.1984). As previously stated the first Garbage Pail Kids Stickers were sold in May 1985. The stickers became popular and sales skyrocketed in the winter of 1985 and spring of 1986. In October 1985, OAA sent Topps a cease and desist letter requesting defendant to refrain from continuing to sell Garbage Pail Kids Stickers. Defendant refused and plaintiff brought suit in March 1986. The court finds that there was no impermissible delay in this matter. *See generally Sherry Manufacturing v. Towel King of Fla.,* 220 U.S.P.Q. 855, 859 (S.D.Fla.1983).

■ The court further finds that the defendant knew as of mid-October 1985 that it was intentionally violating the plaintiff's rights and that any harm defendant may have suffered between October and March is outweighed by the economic benefits defendant received. The court is cognizant of the damage an injunction would cause the defendant, but balancing this harm against a continued wrongful appropriation of plaintiff's asserted legal rights, the court finds that the scale clearly tips in favor of the plaintiff in this case.

The final prerequisite to preliminary relief questions where the public interest lies. The Copyright and Lanham Acts contemplate the protection of the purchasing public. *See West Publishing Co. v. Mead Data Central, Inc.,* 616 F.Supp. 1571, 1582 (D.Minn.1985); *Scientific Applications,* 436 F.Supp. at 362. The purpose of these acts is to encourage works of the intellect by protecting the copyright and trademark holder from infringement. *See generally* 1 M. Nimmer, *supra,* § 1.03, at 1–30 to 1–30.-3; 1 J.T. McCarthy, *supra,* § 2:1 *passim.* The exclusive rights granted to authors allows public access to the works and at the same time protects consumers from being misled or confused as to particular parties' products. *See, e.g., Diamond v. Am-Law Pub. Corp.,* 745 F.2d 142, 147 (2d Cir.1984); *Amp, Inc. v. Foy,* 540 F.2d 1181, 1185 (4th Cir.1976). As discussed earlier, both copyright and trademark laws specifically provide for injunctive relief when infringement is demonstrated. In the

present case, it is in the public interest to prevent further infringement and resulting consumer confusion by injunction.

The court concludes that the plaintiff has sufficiently shown a substantial likelihood of success in this matter and has satisfied the requirements justifying a preliminary injunction.

Accordingly, the court holds that the plaintiff is entitled to a preliminary injunction. Said injunction will issue upon application of the plaintiff. The plaintiff will be required to post a substantial bond and the parties will have thirty days, or a time period that they can agree upon, to conduct discovery on the issue of the amount and conditions of the bond.