Mr. David Eberdt, Director Arkansas Crime Information Center One Capital Mall Little Rock, AR 72201
Dear Mr. Eberdt:
This is in response to your request for an opinion concerning the lending and use of a copyrighted videotape. Specifically, you have asked: 1) whether a copyrighted crime prevention videotape purchased by your organization may be loaned to another non-profit or governmental organization for broadcast on closed circuit television for educational purposes; and 2) whether that organization may make a copy of the tape for repeated use.
It is my opinion that the loaning and broadcast of the videotape would not constitute a copyright infringement, but that the copying of the videotape may constitute a violation.
Federal copyright law found in Title 17 U.S.C. § 101 et seq. governs the issue. Owners of copyrights are given certain exclusive rights under Title 17. See 17 U.S.C. § 106. These rights, however, are limited by other provisions of the title, provisions which allow some use of copyrighted material even without permission of the copyright owner. See 17 U.S.C. § 107 and 109. Because the purpose of copyright legislation is to encourage and foster the creativity of artists, some "fair use" of copyrighted material is permissible if it does not defeat this goal. Iowa State University Research Foundation Inc. v. American Broadcasting Co., 621 F.2d 57 (2d Cir. 1980).
I. LENDING AND BROADCASTING OF THE TAPE
One specific statutory provision of Title 17 allows the Arkansas Crime Information Center to loan the videotape, and two other provisions likely prevent the broadcast from constituting a copyright infringement. Your organization may loan the videotape pursuant to 17 U.S.C. § 109, which provides:
 Notwithstanding the provisions of Section 106(3) [17 U.S.C. § 101
et seq.], or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.
The broadcasting of the videotape on closed circuit television for educational purposes is a more difficult question, but in my opinion is still permissible under 17 U.S.C. § 110 which provides in pertinent part:
 Notwithstanding the provisions of section 106 [17 U.S.C. § 106], the following are not infringements of copyright:
 (1) performance or display of a work by instructors or pupils in the course of face-to-face teaching activities of a nonprofit educational institution, in a classroom or similar place devoted to instruction, unless, in the case of a motion picture or other audiovisual work, the performance, or the display of individual images is given by means of a copy that was not lawfully made under this title [17 U.S.C. § 101 et seq.], and that the person responsible for the performance knew or had reason to believe was not lawfully made.
 (2) performance of a non-dramatic literary musical work or display of a work, by or in the course of a transmission, if —
 (A) the performance or display is a regular part of the systematic instructional activities of a governmental body or nonprofit educational institution; and
 (B) the performance or display directly related and of material assistance to the teaching content of the transmission; and
 (C) the transmission is made primarily for — (i) reception in classrooms or similar places normally devoted to instruction, or (ii) reception by persons to whom the transmission is directed because their disabilities or other special circumstance prevent their attendance in classrooms or similar places normally devoted to instruction, or (iii) reception by officers or employee's of governmental bodies as a part of their official duties or employment. . . .
Subsection (1) of 110 applies only to nonprofit educational institutions. Subsection (2) applies to nonprofit educational institutions and governmental bodies. The entity displaying the tape fits into one of these categories. It should also be noted that broadcast of an unlawfully made copy of the videotape is still a copyright infringement under 110.
Another provision of Title 17 which may allow broadcast of the videotape is found in 107, and is commonly referred to as the doctrine of "fair use":
Notwithstanding the provisions of section 106 [17 U.S.C 106], the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include —
(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of a copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.
It has been held that although a non-commercial educational use under the first factor above weighs in favor of a "fair use", "a finding of a nonprofit educational purpose does not automatically compel a finding of fair use." Marcus v. Rowley, 695 F.2d 1171
(9th Cir. 1983). The second factor turns largely on whether the work is mainly "creative" or "informational" Marcus, supra. The more "creative" a work, the less likely the use is a fair use. It appears that a tape utilized by your organization would be more highly informational than creative. The third factor weighs against fair use in the problem presented, as the videotape will presumably be broadcast in its entirety. The fourth factor, often seen as the most important one, (See Harper Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539 (1985) focuses on the use's effect on the potential market for the work. The application of this factor to the question
here presented weighs in favor of a finding of fair use. It is unlikely that persons to whom a crime prevention videotape is broadcast will be less likely to purchase the videotape after viewing it on closed circuit television. It is unlikely that persons would personally purchase such a videotape in any instance. Therefore, under either 110, if applicable, or 107, broadcast of the loaned tape appears not to constitute a copyright infringement.
II. COPYING OF THE VIDEOTAPE
Although the question of whether a nonprofit or governmental organization may make a copy of the videotape for repeated use is governed by the same "fair use" test set out above, reasoned analysis leads to a different conclusion when applied to copying of the tape. The main distinction rests upon the most important fourth and final factor, that of the effect of the use on the potential market for the work. There is nothing to indicate that the nonprofit or governmental organization could not simply purchase their own copy of the work, or that the copyright owner is unable or unwilling to sell one. Copying of the videotape therefore affects the market for the work. Although the effect is small as we are dealing with one videotape, it has been held that the mere absence of unreasonable pecuniary damage does not require a finding of fair use. Marcus, supra.
Additionally, as regards the third factor, the substantiality of the use, it should be noted that "within the framework of reasonableness, substantial and verbatim copying has usually precluded a finding of fair use." Encyclopedia Britannica Corp. v. Crooks, 542 F. Supp. 1156 (W.D.N.Y. 1982).
Although the question is a close one, as it involves one incident of copying, and not the wide ranging infringement presented by such cases as Crooks, supra, prudence dictates that a copy not be made of the videotape. Under "fair use" analysis, two factors, (Nos. 1 and 2) weigh in favor of fair use, and two factors, (Nos. 3 and 4) weigh against fair use. Because it appears that factor four is to be accorded the most weight, copying of this videotape may not constitute a "fair use" and consequently might present a copyright infringement.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.