GUTHRIE MCCLINTIC, Appellant, *v.* EDWARD SHELDON, Respondent, et al., Defendants.

First Department, June 15, 1945.

*Louis Nizer* of counsel (*Walter S. Beck* with him on the brief; *Phillips, Nizer, Benjamin & Krim,* attorneys), for appellant.

*Arthur F. Driscoll* of counsel (*Milton M. Rosenbloom* with him on the brief; *O'Brien, Driscoll & Raftery,* attorneys), for Edward Sheldon, respondent.

COHN, J. Plaintiff is a theatrical producer and director. Defendants are authors of the play " Dishonored Lady ". In December, 1928, plaintiff entered into a written agreement with defendants whereby plaintiff was granted the exclusive right of presentation of the play in the United States and the Dominion of Canada. In the event that plaintiff presented the play in New York City for three consecutive weeks under his own direction, the agreement provided that plaintiff was to have an " interest in the play and/or in profits derived therefrom ",

including, among other rights, 50% of " all net profits and/or sums derived from " the sale or other disposition of motion picture rights. The contract also stipulated that " the copyright covering any play or the right of copyright is not assigned or released by the Author and that all the Author's right, title and interest therein are expressly reserved to him." As the play had a run in New York City far beyond the prescribed period, plaintiff under his contract with defendants became entitled to a 50% share in the motion picture rights.

In the year 1931 there were negotiations for the sale of the motion picture rights for the sum of $30,000 to the Metro-Goldwyn-Mayer Corp., a motion picture producer, but the transaction did not materialize. The next year, the Metro-Goldwyn Pictures Corporation produced a motion picture under the name of " Letty Lynton " which defendants claimed constituted a plagiarism of the play " Dishonored Lady." Defendants thereupon brought suit in the United States District Court for the Southern District of New York to enjoin the infringement upon their copyright in the play " Dishonored Lady " and to obtain redress for the infringement. They succeeded as to each branch of the case. After eight years of litigation, they ultimately recovered by way of damages the sum of $172,413.11. (*Sheldon* v. *Metro-Goldwyn Pictures Corporation*, 26 F. Supp. 134; 106 F. 2d 45; 309 U. S. 390.) This sum included $15,552.62 for the authors' disbursements in connection with the law suit and an allowance of $33,000 counsel fees as part of the costs fixed by the Circuit Court of Appeals. In the present action, plaintiff asserts a right to 50% of this fund minus the disbursements and counsel fees, predicating his claim upon the provision in the agreement heretofore quoted giving him half of all sums derived from sale or other disposition of motion picture rights. Only the defendant Sheldon appeared in the action. The other defendant was not served with process and did not file an appearance.

After a trial before the court without a jury, the complaint was dismissed, the court sustaining the contention of defendant that the recovery in the Federal court was for damages for the unauthorized appropriation of defendants' copyright and not of the motion picture rights granted to plaintiff. From the judgment dismissing the complaint plaintiff appeals.

The question for determination is whether defendants are entitled to retain the entire recovery because they obtained such compensation as damages in an action for copyright infringement, or whether plaintiff is entitled to his interest in the fund

in accordance with the agreement which gives him a 50% share in all net profits derived from sale or other disposition of motion picture rights.

We think plaintiff, as the owner of an interest in the play which included a half share of all net profits and sums *derived from a sale or other disposition* of the motion picture rights, is entitled to receive his proportionate share of the net funds recovered by defendants for the unauthorized production of a motion picture of the play.

The recovery from the Metro-Goldwyn company was not, as defendant Sheldon urges, in the nature of a penalty imposed upon the infringer nor was it to inflict punishment upon the wrongdoer for injury to defendants' person which recovery defendants alone might retain. On the contrary, it was just compensation for the wrong perpetrated upon those who owned the motion picture rights of the play. The infringer was compelled to disgorge the profits directly traceable to the improper use of the motion picture rights belonging jointly to defendants and to plaintiff. The judgment obtained against the Metro-Goldwyn company which had produced the motion picture without a license was limited to just compensation for the license to make a motion picture of the play. Plaintiff was entitled to his one-half share of that compensation.

A recital of the steps in the litigation in the Federal court shows that defendants' recovery was limited to the value of the property in the play which had been converted. In the United States District Court defendants were allowed all the profits which the motion picture producers had earned, approximately $600,000. The court held that there could be no apportionment of the profits of the infringing composition based upon a comparison of what was plagiarized and what was not. (*Sheldon* v. *Metro-Goldwyn Pictures Corporation,* 26 F. Supp. 134, 139.) Upon appeal to the United States Circuit Court of Appeals, that judgment was reduced to about $140,000 on the theory that only 20% of the total income obtained by the infringers was traceable to the value of the copyright infringed. The court apportioned the profits so that defendants herein would receive only those moneys as damages which resulted from the appropriation of the play; profits derived from other contributing causes were eliminated. (*Sheldon* v. *Metro-Goldwyn Pictures Corporation,* 106 F. 2d 45, 51.) In affirming the determination of the Circuit Court, the Supreme Court of the United States (*Sheldon* v. *Metro-Goldwyn Corp.,* 309 U. S. 390), in an opinion by Chief Justice Hughes, said (p. 406): " When

such an apportionment has been fairly made, the copyright proprietor receives all the profits which have been gained through the use of the infringing material and that is all that the statute authorizes and equity sanctions.

" Both courts below have held in this case that but a small part of the profits were due to the infringement, and, accepting that fact and the principle that an apportionment may be had if the evidence justifies it, we pass to the consideration of the basis of the actual apportionment which has been allowed.

" The controlling fact in the determination of the apportionment was that the profits had been derived, not from the mere performance of a copyrighted play, but from the exhibition of a motion picture * * * ."

We find no merit to the contention that the damages allowed in the Federal court were for an injury to person, that is, a personal tort which bears no relation to actual compensation for the conversion of the motion picture rights. By whatever name one chooses to designate it, the recovery was actually for the value of motion picture rights of the play " Dishonored Lady ". Though it represented damages for infringement of defendants' copyright in the play, it also constituted damages for the appropriated motion picture rights.

It is not disputed that if the license to make a motion picture of the play had been sold to the Metro-Goldwyn-Mayer Corp., plaintiff would have received 50% of the sales price. The rights here were not purchased but were wrongfully appropriated. As defendants have recovered for that conversion, plaintiff is not to be deprived of his interest in that recovery. By paying over the apportioned profits from the motion picture which was adjudged to be an infringement upon the copyright of the play " Dishonored Lady ", the Metro-Goldwyn company merely consummated an involuntary sale of a license to produce a motion picture of the play. Within the clear language of his agreement with defendants, plaintiff was a half owner of such fund.

Defendant Sheldon stresses the fact that all right, title and interest in the copyright were reserved to defendants by agreement. However, it is the law that, though the title in the copyright of a play may be reserved to one of the parties, the exclusive licensee to present the play has an equitable interest therein. (*Collins* v. *Hupp Motor Car Corporation,* 22 F. 2d 27; *Ind. Wireless Co.* v. *Radio Corp.,* 269 U. S. 459; *L. C. Page & Co.* v. *Fox Film Corporation,* 83 F. 2d 196.) Defendants here were trustees of the copyright for the benefit of both themselves and

plaintiff, and defendants may not, in justice, retain all the proceeds received by them as compensation for an unauthorized appropriation of the play which is owned in part by plaintiff. In the case of *Kirke La Shelle Co.* v. *Armstrong Co.* (263 N. Y. 79) the Court of Appeals held that plaintiff there by reason of a 50% interest in the dramatic rights to a play, exclusive of motion picture rights, was, nevertheless, entitled to share the proceeds received by defendants for the talking motion picture rights, though such "talkie" rights were not within the contemplation of the parties at the time of their agreement. Where, as in the case at bar, plaintiff by express agreement was to have not only an exclusive grant to produce the play but also a 50% interest in all sums derived from motion picture rights, there can be little doubt as to the justice of his claim to a share in defendants' recovery for the unauthorized production of the motion picture of the play "Dishonored Lady".

It is also urged by defendants that, as paragraph "Twelfth" of the agreement makes specific provision for the disposition of the motion picture rights, plaintiff would be entitled to a recovery only if the sale or disposition of such rights was made in accordance with the set plan there outlined. Under that arrangement the proceeds of the sale or disposition of the motion picture rights of the play were to be received and held by an arbiter who was to act as agent for both plaintiff and defendants. All moneys were to be paid, not to defendants, but to the arbiter, who was to deposit the funds in a special account. Withdrawals from the account could be made only by checks signed by the arbiter or some other person designated by the Dramatists' Guild; defendants and plaintiff were to receive their respective shares from the arbiter. We are unable to perceive how this provision in the agreement could operate as a bar to plaintiff's right to recover his interest in the motion picture rights of the play where these were misappropriated and payment therefor subsequently made. The manner of disposition of the funds available from the sale of motion picture rights outlined in the agreement merely confirms plaintiff's contention that the parties were co-owners of all motion picture rights.

Numerous defenses interposed by defendant Sheldon were decided in favor of plaintiff by the trial court. Our examination of the record leads us also to conclude that the defenses litigated are without merit.

There remains to be determined the question as to how much of the fund recovered should be paid to plaintiff. The final judgment of the Federal court, including disbursements and

$33,000 allowed by the Circuit Court as counsel fees, amounted to $172,413.11. Disbursements of $15,552.62 were repaid to defendants' attorneys. Defendants then paid to their attorneys for legal services rendered $52,286.83, which represents one third of the total recovery, including the counsel fees allowed as costs, less the disbursements. The testimony in connection with the services rendered by the attorneys in the Federal court action establishes that the sum of $52,286.83 compensation actually paid by defendants to the attorneys was fair and reasonable. Plaintiff is now to reap the benefit of a 50% share in the fund recovered due in large measure to their highly successful services. It is but equitable and just that he should bear his equal burden of those fees. Deducting the disbursements and the counsel fee from the total fund collected, there is a balance of $104,573.66, of which the plaintiff is entitled to one-half share, to wit, $52,286.83.

The judgment appealed from should be reversed, with costs, and judgment granted to the plaintiff for the sum of $52,286.83, with interest from May 9, 1940, together with the costs and disbursements of this action.

MARTIN, P. J., TOWNLEY, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and judgment directed in favor of the plaintiff for the sum of $52,286.83, with interest from May 9, 1940, together with the costs and disbursements of the action. Settle order on notice.