ORIGINAL APPALACHIAN ART-
WORKS, INC., a Georgia Corporation,
Plaintiff–Counterclaim defendant-Ap-
pellee,

v.

S. DIAMOND ASSOCIATES, INC., an Il-
linois Corporation, Defendant–Coun-
terclaim plaintiff-Appellant.

No. 89–8368.

United States Court of Appeals,
Eleventh Circuit.

Sept. 18, 1990.

Kenneth L. Shigley, Earl J. VanGerpen,
Deborah Lorraine Morgan, VanGerpen,
Shigley & Hoffman, Marietta, Ga., Martin
L. Stern, Charles A. Laff, Lawrence R.
Robins, Laff, Whitesel, Conte & Saret, Chi-
cago, Ill., for defendant-counterclaim plain-
tiff-appellant.

E. Kendrick Smith, John L. Latham, Rob-
ert W. Beynart, Thomas M. Barton, Smith,
Gambrell & Russell, Atlanta, Ga., for plain-
tiff-counterclaim defendant-appellee.

Before TJOFLAT, Chief Judge,
TUTTLE, and RONEY *, Senior Circuit
Judges.

TJOFLAT, Chief Judge:

The defendant in this declaratory judg-
ment action appeals the district court's
grant of summary judgment for the plain-
tiff. The defendant, an exclusive licensee
of the plaintiff's, contends that the district
court erred in holding that the defendant
had no right to a proportion of the plain-
tiff's settlement in a lawsuit against a third
party for copyright infringement. We

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

agree with the defendant. Accordingly, we reverse the district court's decision and remand for further proceedings.

## I.

Since 1979, Original Appalachian Artworks, Inc. (OAA) has owned the copyright and trademark for the Cabbage Patch Kids. In 1982, OAA began a licensing program that allowed companies to use the Cabbage Patch Kids name and characters in association with a variety of products, including dolls, books, records, cereals, and children's clothing, shoes, and linens. As its exclusive licensing agent, OAA employed Schlaifer, Nance & Company.

In February 1983, OAA (through its licensing agent) entered into a licensing agreement with S. Diamond Associates (Diamond).[1] The agreement gave Diamond "the exclusive license to utilize the name, character, symbol, design, likeness and visual representation" of the Cabbage Patch Kids "solely and only in connection with the manufacture, distribution and sale" of a puffy sticker product. In exchange for those rights, Diamond agreed to pay OAA $45,000 and ten percent of its sales revenues. OAA expressly retained the right to any goodwill associated with the Cabbage Patch name. In addition, OAA reserved "the sole right to determine whether or not any action shall be taken on account of any infringements or imitations [of the licensed marks]." The agreement thus proscribed Diamond from taking such action "without first obtaining the written consent of [OAA] to do so."

In 1985, Topps Chewing Gum, Inc. (Topps) began to market a product called Garbage Pail Kids. The product consisted of a package containing sticker cards with images of characters that were strikingly similar to the Cabbage Patch Kids, but depicted in less than flattering situations. For example, the stickers showed one Garbage Pail Kid, Graffiti Petey, painting graffiti on a wall; another Garbage Pail Kid, Adam Bomb, has just blown himself up.[2] In 1986, Topps also began a licensing program for Garbage Pail Kids products such as T-shirts, school supplies, and balloons. Topps had previously discussed the possibility of a licensing arrangement with OAA but had never entered into one.

In March 1986, OAA brought suit in the district court against Topps for copyright infringement, trademark infringement, and unfair competition. In August 1986, the district court granted OAA a preliminary injunction enjoining Topps from selling the Garbage Pail Kids stickers. *See Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*, 642 F.Supp. 1031 (N.D.Ga.1986). On February 2, 1987, OAA and Topps entered into a settlement agreement: Topps agreed to pay OAA $7 million; in return, OAA agreed not to sue Topps and not to authorize any of its licensees to sue Topps for any copyright or trademark infringement related to Topps' Garbage Pail Kids.

On February 4, 1987, after learning of the settlement agreement, Diamond moved to intervene before the court dismissed the case. Diamond contended that it had suffered injury as a result of Topps' infringing conduct and sought injunctive relief and damages. To that end, Diamond requested an accounting to determine how much Topps owed OAA and Diamond. The district court denied Diamond's motion.

OAA then brought the present diversity jurisdiction action against Diamond in the

---

1. Because Schlaifer, Nance & Company had authority to act as OAA's agent in granting licenses to third parties, and because that authority was disclosed in the licensing agreement with Diamond, we treat the agreement between Diamond and Schlaifer, Nance as a contract between Diamond and OAA. *See* F. Mechem, Outlines of the Law of Agency § 296 (4th ed. 1952) (when agent has authority to bind the principal, and principal is disclosed, the contract is the principal's "contract as much as if he had executed it in person").

2. At oral argument before this court, counsel for OAA compared a Cabbage Patch sticker with a Garbage Pail sticker: he described the Cabbage Patch Kid as "this absolutely adorable little child coming out of the proverbial cabbages: you just want to pick her up, hold her, and hug her to death"; he then described the Garbage Pail Kid as "a child covered in, and dripping in, . . . snot."

district court. OAA sought a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 (1988) that Diamond had no interest in the proceeds of the settlement agreement. Diamond counterclaimed, contending that it had suffered substantial economic injury from the marketing of the Garbage Pail stickers and that OAA had a duty, under the licensing agreement, to protect Diamond's interests as a licensee. Diamond thus requested the court to impose a constructive or resulting trust, or an equitable lien, on the settlement proceeds and also requested an accounting to determine the proportion of the proceeds to which Diamond was entitled.[3]

After a period of discovery, both parties moved for summary judgment. In a March 1989 order, the district court granted summary judgment for OAA. The district court held that Diamond had no right, pursuant to the licensing agreement, to compensation when OAA recovered from an infringer. In the court's view, Diamond relinquished any such right since OAA retained the exclusive right to "institute suit or take any action on account of any infringements or imitations." The court acknowledged that this provision gave rise to a fiduciary obligation on OAA's part "to protect Diamond's exclusive licensed rights," but the court held that this fiduciary obligation "does not require that OAA equitably compensate Diamond where OAA recovers for the unauthorized appropriation of Diamond's rights." Thus, although OAA must presumably take action to prevent infringement, OAA has no obligation to compensate Diamond if OAA recovers for any injury suffered by Diamond as a result of the infringement.

In addition to its contract interpretation, the district court supported its decision by finding that OAA's settlement with Topps constituted a recovery solely for the damage that the Garbage Pail Kids caused to the goodwill associated with the Cabbage Patch name. OAA's recovery, according to

the court, did not reflect any decrease in licensing fees associated with decreases in Diamond's revenues as a result of the marketing of the Garbage Pail Kids. As the court observed, OAA expressly retained the right to that goodwill in the licensing agreement. Based on those conclusions, the district court determined, pursuant to Fed.R.Civ.P. 56(c), that no genuine issue of material fact existed and that OAA was entitled to summary judgment as a matter of law.

On appeal, Diamond argues that the district court erred, as a matter of law, in holding that the licensing agreement prevented Diamond from recovering the proportion of the Topps' settlement reflecting the injuries Diamond suffered as a result of Topps' infringing conduct. Based on that error, Diamond contends, the district court also erred in holding that OAA had no fiduciary duty to pay Diamond a proportion of the settlement. We agree, and accordingly reverse the district court's grant of summary judgment and remand the case for further proceedings.

## II.

The district court properly acknowledged that "OAA was under an implied good faith obligation not to do anything that would impair or destroy the value of an exclusive licensee's rights." (Citing *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 188 N.E. 163 (1933); *Zim v. Western Publishing Co.*, 573 F.2d 1318 (5th Cir.1978); 3 Nimmer on Copyright § 10.11[A], at 10–94 (1987).) The court, however, held that this obligation did not require OAA to share the Topps' settlement proceeds with Diamond. In so concluding, the district court distinguished *McClintic v. Sheldon*, 269 A.D. 356, 360–61, 55 N.Y.S.2d 879, 882 (N.Y. App.Div.1945), *aff'd*, 295 N.Y. 682, 65 N.E.2d 328 (1946), a case on which Diamond relied. We first analyze the *McClin-*

---

**3.** Diamond also claimed that OAA's refusal to pay Diamond a proportion of the settlement constituted a violation of a Georgia tort law prohibiting interference with property rights. *See* Ga.Code Ann. § 51–9–1 (1982). The district

court did not decide this claim, and we therefore decline to consider it. We note in passing that the relief prayed for in this claim is the same as the relief we describe in the text.

*tic* case and then consider the extent of OAA's good faith obligation.

In *McClintic*, the defendants, who had authored a play, granted McClintic the exclusive right to present the play. Pursuant to the agreement, the plaintiff received an interest in all profits derived from the play, including fifty percent of all profits from the sale or disposition of motion picture rights. The authors expressly retained all rights, title, and interest in the play's copyright. Metro–Goldwyn–Mayer Corp. (MGM) subsequently attempted to acquire the movie rights from the authors, but the negotiations failed. MGM nevertheless produced a movie that rather closely resembled the play. In fact, the movie so closely resembled the play that the authors sued MGM for copyright infringement and won. McClintic, however, asserted a right to fifty percent of the authors' recovery. The authors refused to pay, and McClintic brought suit. The trial court denied the plaintiff recovery, holding that the defendants had recovered against MGM solely "for damages for the unauthorized appropriation of defendants' copyright and not of the motion picture rights granted to plaintiff." 55 N.Y.S.2d at 880. The supreme court, appellate division, however, reversed.

The supreme court held that, although the defendants' recovery in their suit against MGM "represented damages for infringement of [their] copyright in the play, it also constituted damages for the appropriated motion picture rights." *Id.* at 882. Pursuant to the licensing agreement, the plaintiff had a right to fifty percent of the profits derived from any disposition of the motion picture rights. As the *McClintic* court explained:

> It is not disputed that if the license to make a motion picture of the play had been sold to the Metro–Goldwyn–Mayer Corp., the plaintiff would have received 50% of the sales price. Where, as here, the rights were not purchased but were improperly appropriated and defendants have recovered for that conversion, plaintiff is not to be deprived of his interest in the recovery. By paying over the apportioned profits from the motion picture

which was adjudged to be an infringement upon the copyright of the play ..., the Metro–Goldwyn company merely consummated an involuntary sale of a license to produce a motion picture of the play. Within the clear language of his agreement with defendants, plaintiff was a half owner of such fund.

*Id.*

In addition, the *McClintic* court explained that, even if the plaintiff did not have an interest in profits from the movie rights, the plaintiff had an equitable interest in the defendants' copyright—all right, title, and interest that the defendants had expressly retained. Citing *Kirke La Shelle*, the supreme court stated that the "[d]efendants here were trustees of the copyright for the benefit of both themselves and plaintiff, and defendants may not, in justice, retain all the proceeds received by them as compensation for an unauthorized appropriation of the play which is owned in part by plaintiff." *Id.*

The *McClintic* court thus held, under two theories, that the plaintiff had a right to a portion of the defendants' recovery. First, the defendants' recovery constituted damages for the appropriated motion picture rights, in which the plaintiff owned a fifty percent interest under the licensing agreement. Second, notwithstanding the plaintiff's interest in the movie rights, the defendants also had a fiduciary duty that prevented them from retaining the entire recovery for MGM's unauthorized appropriation of the play itself. As other courts have similarly held, "[t]here is implied a negative covenant on the part of the [grantor] ... not to use the ungranted portion of the copyright estate to the detriment, if not the destruction, of the licensees' estate." *Manners v. Morosco*, 252 U.S. 317, 327, 40 S.Ct. 335, 336, 64 L.Ed. 590 (1920) (quoting *Harper Bros. v. Klaw*, 232 F. 609, 613 (S.D.N.Y.1916)).

 Applying this rationale to the present case, Diamond has two possible grounds for recovery of a proportion of the settlement. Under *McClintic*'s first rationale, Diamond is entitled to the proportion

of the settlement that represents damages for Topps' appropriation of Diamond's exclusive license. As with the movie rights at issue in *McClintic*, Diamond's licensing agreement expressly gave it the exclusive right to manufacture Cabbage Patch stickers. If, in marketing its Garbage Pail Kids stickers, Topps appropriated Diamond's exclusive license to manufacture stickers, then Diamond is entitled to the proportion of the settlement representing that appropriation. Under *McClintic's* second rationale, Diamond is entitled to the proportion of the settlement representing Diamond's injuries as a result of Topps' sales, even if that injury did not relate to a right that the licensing agreement expressly granted to Diamond. OAA has a fiduciary obligation not to allow its own copyright to be used to the detriment of its licensees. Thus, if Diamond was injured by Topps' conduct—even if that conduct did not constitute an appropriation of Diamond's exclusive license—Diamond is entitled to the proportion of the settlement representing that injury. The present case, therefore, turns on a single issue: did Diamond suffer injury as a result of Topps' conduct? If so, Diamond is entitled to a proportion of the settlement whether or not Topps' conduct constituted an appropriation of Diamond's exclusive license.

The district court did not reach this question. Rather, the court attempted to distinguish *McClintic* on the ground that the agreement in *McClintic* "*expressly* gave the plaintiff/licensee the right to one-half of the proceeds in the event the playwright sold the play for use as a motion picture." According to the court, the licensing agree-

ment here contained no such provision. We disagree. The agreement expressly gave Diamond an exclusive right to make stickers. Topps' stickers might well have constituted an appropriation of that exclusive right. As we explain, moreover, if Diamond was injured by Topps' conduct, it has a right to a proportion of the settlement whether or not the injury involved an actual appropriation of its exclusive license.

■ As this discussion demonstrates, the district court could not have granted summary judgment on the ground that Diamond had no right, pursuant to the licensing agreement, to recover a proportion of the settlement. The district court could have granted summary judgment only if it concluded that no genuine issue of material fact existed on the issue of injury—i.e., if, drawing from the record all inferences favorable to Diamond, it was apparent that Diamond suffered no injury as a result of Topps' conduct. The district court clearly did not consider this question. Nonetheless, because we are bound to uphold the disposition below if an alternate ground supports it, we consider whether the district court could properly have granted summary judgment on that basis.

We conclude that the district court could not have done so. In bringing its infringement action against Topps, OAA heavily relied on the injury suffered by Diamond to support its claim for injunctive relief and damages. For example, OAA's proposed findings of fact and conclusions of law in the *Topps* case emphasizes throughout that the Topps stickers directly competed with Diamond's stickers.[4] As the transcript of

---

**4.** Paragraph 36 of its proposed findings of law stated: "The Diamond license was exclusive and precluded licensing Topps for the stickers...." Paragraphs 38 and 39 stated: "Berger [the Topps representative] attempted to convince Roger Schlaifer [OAA's licensing agent] that the Topps' stickers would not compete with Diamond's stickers because Topps' stickers were less expensive and Topps' distribution was totally different.... Mr. Schlaifer was not persuaded by Mr. Berger's arguments, and Topps was not granted a license."

Paragraph 114 stated: "The GARBAGE PAIL KIDS licensing program is in direct competition with the CABBAGE PATCH KIDS licensing pro-

grams." More specifically, paragraph 144 stated: "The GARBAGE PAIL KIDS stickers are directly competitive with Diamond's present Puffy Stick–Ons and it is likely that GARBAGE PAIL KIDS sales will cut into CABBAGE PATCH KIDS sales." Paragraph 145 continued: "In its own GARBAGE PAIL KIDS licensing program, Topps recognized that puffy stickers would compete with paper stickers when it refused product approval for Imperial Toys' vinyl puffy stickers because it would conflict with Warner Books' license for paper sticker albums."

In its proposed conclusions of law, OAA stated in paragraph 33: "OAA has proved that the GARBAGE PAIL KIDS stickers will have a nega-

the preliminary injunction hearing also demonstrates, OAA based its case in large part on the similarity between the Topps and Diamond stickers.[5] Additionally, OAA had begun to prepare Diamond's owner to testify at trial in the *Topps* case regarding the company's injuries. In effect, therefore, OAA has conceded that Diamond suffered injury as a result of the direct competition between Topps' stickers and Diamond's own stickers. At the very least, that concession raises a genuine issue of material fact.

### III.

For the foregoing reasons, we conclude that the district court erred in granting summary judgment for OAA. Pursuant to the licensing agreement, Diamond has a right to recover the proportion of OAA's settlement agreement with Topps that represents injury suffered by Diamond from the marketing of the Garbage Pail Kids. OAA, moreover, has a fiduciary duty to pay Diamond that proportion of the settlement whether or not Topps' conduct constituted an appropriation of Diamond's exclusive license. The case thus turns on whether, and to what extent, Diamond suffered injury as a result of Topps' conduct. That question, however, presents a genuine issue of material fact.

Accordingly, the district court's decision is VACATED and the case is REMANDED

for further proceedings consistent with this decision.

IT IS SO ORDERED.

---

tive impact upon the potential market for a value of the copyrighted work.... [P]laintiff has shown direct and actual competition between its CABBAGE PATCH KIDS stickers, manufactured and sold under license to Diamond Toys and the GARBAGE PAIL KIDS stickers.... Topps was repeatedly denied a CABBAGE PATCH KIDS license for stickers because it would compete with Diamond's exclusive license. Paragraph 55 reiterated: "Topps' GARBAGE PAIL KIDS stickers are directly competitive with Diamond's CABBAGE PATCH KIDS Puffy Stick–Ons."

5. OAA, in its opening statement, declared: "We will show the similarity of the Garbage Pail Kids stickers with the similarity of the products of the Cabbage Patch Kids stickers. That's a licensed product by Diamond Toys.... We will

also show the similarity of the products ... by the testimony ... of Mr. Schlaifer [OAA's licensing agent] who will show direct competition in the marketplace."

At the hearing, OAA did what it promised. As Schlaifer testified: "Diamond's initial license covered all self-adhesive stickers and sticker by-products ...." He indicated that the Diamond license would have prevented OAA from licensing Topps to produce its stickers. OAA also presented the testimony of the product manager of Hallmark Cards, who was responsible for juvenile stickers, that the two products were in direct competition.

OAA then reemphasized in its closing argument that it had "shown direct competition between Garbage Pail and Cabbage Patch Kids in stickers, for instance."