United States Court of Appeals,

Eleventh Circuit.

No. 93-9077.

ORIGINAL APPALACHIAN ARTWORKS, INC., a Georgia Corporation, Plaintiff-Counter-Defendant, Appellee,

Schlaifer Nance & Company, Inc., Intervenor-Plaintiff,

v.

S. DIAMOND ASSOCIATES, INC., an Illinois Corporation, Defendant-Counter-Claimant, Appellant.

Jan. 25, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:87-cv-183-JTC), Jack T. Camp, Judge.

Before EDMONDSON and CARNES, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

S. Diamond Associates, Inc. ("Diamond") appeals from the judgment of the United States District Court for the Northern District of Georgia in this action brought by Original Appalachian Artworks, Inc. ("OAA") seeking a declaratory judgment that Diamond was not entitled to recover a portion of the proceeds of a settlement agreement made between OAA and Topps Chewing Gum, Inc. ("Topps"). For the reasons set forth below, we affirm.

I. BACKGROUND

This is the second appearance of this case in our court after an earlier remand to the district court. *See Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.,* 911 F.2d 1548 (11th Cir.1990) ("*OAA I* "). The relevant facts are as follows.

OAA owns the copyright registration and trademark for the Cabbage Patch Kids, soft sculptures designed by Xavier Roberts,

which made their debut in 1980 as the "Little People from Babyland General."  OAA's principal licensee, Coleco Industries, began mass marketing Cabbage Patch Kids dolls in 1983. [1]  Also in 1983, OAA entered into a licensing agreement with Diamond through OAA's exclusive licensing agent, Schlaifer Nance & Co., Inc., to manufacture and sell certain puffy sticker products related to its dolls.[2]  The contract gave Diamond an "exclusive license to utilize the name, character, symbol, design, likeness and visual representation" of Cabbage Patch Kids, "solely and only in connection with the manufacture, distribution and sale of the article or articl[es] specified in Schedule "B.' "  (Plaintiff's Trial Exhibit 1, ¶ 1).  Schedule "B" stated:

Schedule "B" *LICENSED PRODUCTS*

1. Self adhesive character and/or logo stickers as follows ...

> ACCESSORIES MAY BE INCLUDED THAT DO NOT CONFLICT WITH COLOR FORMS.

> a. puffy vinyl stickers

b. "color-me" fuzzy stickers with accessory markers

> c. puffy, scratch 'n sniff stickers

---

[1]OAA's president, Della Tolhurst, testified at the trial in this case that the sculptures were never referred to as dolls within OAA, but as "kids" or "babies."  (R12-76).  She described the "Little People" as "unique individuals, very huggable, soft, lovable, very wholesome products."  (*Id.*).  The Cabbage Patch Kids manufactured and marketed by Coleco Industries were mass-produced in the Far East, had vinyl heads and initially carried a wholesale price of $18.00.  OAA continued to make and distribute hand stitched "dolls" with fabric heads, which sold in the gift market for $125.00 or more.  Both products came with birth certificates and adoption papers.  (*Id.* at 80).

[2]Tolhurst testified that at the height of the Cabbage Patch Kids' popularity, OAA had approximately 127 licensees who marketed hundreds of different related products.  (R12-84).

d. flat, scratch 'n sniff stickers on cards or rolls

        2. Waxed-page sticker collection book

3. Waxed-page sticker baby book in book form.

(*Id.* at Schedule "B"). Under the terms of the agreement, OAA retained exclusive rights to the goodwill associated with the Cabbage Patch name. (*Id.* at ¶ 11). The contract also reserved for OAA "the sole right to determine whether or not any action shall be taken on account of any infringements or imitations" of the licensed products and prohibited Diamond from taking any such action without first obtaining OAA's written consent. (*Id.* at ¶ 7(a)).

In 1985, Topps began distributing a sticker type of bubble gum trading card under a trademark it obtained for Garbage Pail Kids. *See Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.,* 642 F.Supp. 1031, 1032 (N.D.Ga.1986) ("*Topps* "). The stickers "derisively depict dolls with features similar to Cabbage Patch Kids dolls in rude, violent and frequently noxious settings." *Id.;* *see also OAA I,* 911 F.2d at 1549 (describing Garbage Pail Kids as "strikingly similar to the Cabbage Patch Kids, but depicted in less than flattering situations"). In response, OAA filed a lawsuit against Topps for copyright and trademark infringement and unfair competition, in which it successfully sought the right to a preliminary injunction against Topps. *See Topps, supra.*[3] Later,

---

[3]Although OAA prevailed on its motion for a preliminary injunction, an injunction never issued because OAA did not make the necessary application. OAA states in its brief on appeal that it could not post the anticipated multi-million dollar bond required and instead, it asked for an expedited trial on the merits.

in settlement of the litigation, Topps agreed to pay OAA seven million dollars in damages. In return, OAA agreed that it would not authorize any of its licensees, including Diamond, to sue Topps for copyright or trademark infringement connected with the Garbage Pail Kids. After learning of the settlement, but prior to the dismissal of the case, Diamond moved to intervene on the ground that it too had suffered damages from Topps' conduct. The district court denied Diamond's motion. *See OAA I,* 911 F.2d at 1549.

OAA subsequently filed this action founded upon diversity of citizenship, 28 U.S.C. § 1332, seeking a declaratory judgment that Diamond had no right to share in the settlement proceeds. Diamond filed a counterclaim, alleging that it suffered economic injury from the marketing of the Garbage Pail Kids cards and that OAA had a fiduciary duty under its licensing agreement with Diamond to protect Diamond's interests as a licensee. Diamond sought to have the court impose a constructive or resulting trust or an equitable lien on the settlement funds and for an accounting to determine the amount of the damages to which it was entitled. Both parties moved for summary judgment. The district court granted judgment to OAA holding that (1) Diamond had no right to compensation under the licensing agreement because the contract reserved to OAA the exclusive right of suing infringers; and (2) OAA's settlement with Topps constituted a recovery solely for the damage caused to the goodwill associated with the Cabbage Patch Kids name, which was the sole property of OAA, and did not reflect any decrease in licensing revenues received from Diamond as a result of the marketing of Garbage Pail Kids (i.e., it did not diminish Diamond's sales).

(R5-90 at 7-10); *see also OAA I,* 911 F.2d at 1550.

Diamond appealed. A panel of this court reversed, finding that Diamond had two possible grounds for recovering a portion of the settlement proceeds which the district court failed to consider. First, Diamond could recover the amount that represented "damages for Topps' appropriation of Diamond's exclusive license." *OAA I,* 911 F.2d at 1552. The court observed that "Diamond's licensing agreement expressly gave it the exclusive right to manufacture Cabbage Patch stickers. If, in marketing its Garbage Pail Kids stickers, Topps appropriated Diamond's exclusive license to manufacture stickers, then Diamond is entitled to the proportion of the settlement representing that appropriation." *Id.* Second, Diamond could recover

> the proportion of the settlement representing Diamond's injuries as a result of Topps' sales, even if that injury did not relate to a right that the licensing agreement expressly granted to Diamond. OAA has a fiduciary obligation not to allow its own copyright to be used to the detriment of its licensees. Thus, if Diamond was injured by Topps' conduct—even if that conduct did not constitute an appropriation of Diamond's exclusive license—Diamond is entitled to the proportion of the settlement representing that injury. *The present case, therefore, turns on a single issue: did Diamond suffer injury as a result of Topps' conduct? If so, Diamond is entitled to a proportion of the settlement whether or not Topps' conduct constituted an appropriation of Diamond's exclusive license.*

*Id.* (emphasis added).

The panel also held that the district court's grant of summary judgment to OAA could not be affirmed on the alternative basis that there was no genuine issue of material fact with respect to whether Diamond had been injured by Topps' conduct. *Id.* The court stated that

> [i]n bringing its infringement action against Topps, OAA

heavily relied on the injury suffered by Diamond to support its claim for injunctive relief and damages. For example, OAA's proposed findings of fact and conclusions of law in the *Topps* case emphasizes throughout that Topps stickers directly competed with Diamond's stickers. As the transcript of the preliminary injunction hearing also demonstrates, OAA based its case in large part on the similarity between the Topps and Diamond stickers. Additionally, OAA had begun to prepare Diamond's owner to testify at trial in the *Topps* case regarding the company's injuries. In effect, therefore, OAA has conceded that Diamond suffered injury as a result of the direct competition between Topps' stickers and Diamond's own stickers. At the very least, that concession raises a genuine issue of material fact.

*Id.* at 1552-53 (footnotes omitted); *see also id.* at 1552 n. 4 and 1553 n. 5.

The case was therefore remanded to the district court to determine "whether, and to what extent, Diamond suffered injury as a result of Topps' conduct." *Id.* at 1553.

On remand, the district court conducted a bench trial. In its findings of fact and conclusions of law, it first considered the scope of Diamond's exclusive license. The court found that the licensing agreement unambiguously granted to Diamond the exclusive right to market the items listed in Schedule "B"; thus, Diamond's license extended only to the specific types of stickers listed in Schedule "B" rather than to the whole category of stickers. The court noted that even if the contract were ambiguous it would still conclude, on the basis of the evidence demonstrating the parties' intent, that Diamond had only a limited item license which did not extend to the type of bubble gum trading card stickers marketed by Topps. Consequently, the court ruled that Topps did not appropriate Diamond's exclusive license.

In accordance with this court's directive, the district court then determined whether Diamond had been damaged even though Topps'

conduct did not constitute an appropriation of Diamond's license. In its consideration of this issue, the court found that Diamond failed to carry its burden of proof and that the evidence introduced at the trial demonstrated there was no direct competition between Topps' Garbage Pail Kids stickers and Diamond's Cabbage Patch Kids stickers. The court rejected Diamond's reliance on the position take by OAA in the *Topps* case as proof that it had been damaged. The court stated that OAA's proposed findings of fact and conclusion of law submitted at the preliminary injunction stage of that litigation

> were based on limited discovery and reflected positions taken by counsel at that time rather than facts supported by the evidence. According to Mr. Nodine, OAA's counsel in the *Topps* case, the [proposed] findings of fact and conclusions of law demonstrated counsel's positions at the time, many of which were later abandoned based on further discovery and counsel's evaluation of evidence that could not be proven at trial. Thus, the testimony of Roger Schlaifer [OAA's licensing agent] and the proposed findings of fact and conclusions of law at the preliminary injunction hearing must be given the weight the circumstances justify. The court notes that with regard to Mr. Schlaifer, the parties failed to call him as a witness in this case, and they did not refer to any deposition taken of Mr. Schlaifer in this case. Instead, the parties referred to Mr. Schlaifer's previous testimony in the transcript of the *Topps* preliminary injunction proceeding.
>
> ....
>
> ... The arguments of counsel during the preliminary stages of the *Topps* case were taken for purposes of advocacy and, as Mr. Nodine testified in this case, OAA was unable to support this position with evidence. Although Mr. Nodine admits that he received an affidavit of Mr. Eber of Hallmark for the *Topps* case to the effect that the stickers competed, this was the only evidence of competition between Garbage Pail Kids and puffy vinyl stickers that OAA had in that case. Mr. Nodine testified during this trial that as a result of this lack of evidence of direct competition OAA changed the trial strategy in the *Topps* case to represent the damage that the Garbage Pail Kids had on OAA's good will and the Cabbage Patch Kids' image. Thus, Mr. Nodine testified that OAA's position at the preliminary stages of the *Topps* case became untenable, and the emphasis of the *Topps* litigation was changed to focus

on the damage to OAA's good will.  The great weight of the evidence at this trial has shown that there was no direct competition.

(R9-150 at 9-10, 13-14).

After summarizing the evidence introduced at the trial relating to the sticker market in general, the demand for Cabbage Patch Kids products versus Garbage Pail Kids products and Diamond's sales during the relevant period of time, the court concluded that Diamond failed to show any injury as a result of Topps' conduct.[4] The court additionally found that Diamond failed to prove a breach by OAA of any fiduciary duty it owed to Diamond.  Finally, the court noted that, even if Diamond had proven injury, "it offered no method to quantify that injury or to determine what proportion of the settlement was attributable to that injury."  (*Id.* at 16 n. 7). The court again entered judgment in favor of OAA.

II. DISCUSSION

Diamond's principal argument on appeal is that OAA should be held, under the doctrine of judicial estoppel, to the position it took in the *Topps* litigation that Topps' Garbage Pail Kids trading cards competed with Diamond's Cabbage Patch Kids stickers and that Diamond was damaged by Topps' sales.  "The doctrine of judicial

---

[4]Licensing expert Jerrold Robinson testified that the puffy vinyl sticker "craze" was fading in the latter part of 1984 and that by late 1985 (when Topps began selling Garbage Pail Kids trading cards), the market for this type of sticker was completely gone.  (R13-332-33).  This trend was reflected by Diamond's puffy sticker sales, which dropped dramatically in the fourth quarter of 1984.  (*See* R12-114;  Plaintiff's Trial Exhibit 19).  There was also evidence that Diamond's stickers did not compete with Topps' stickers because the products had different channels of trade, prices and end uses.  In addition, there was testimony that Cabbage Patch Kids appealed to younger girls, while the hard images portrayed by the Garbage Pail Kids attracted older boys.

estoppel "is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings.' " *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1261 (11th Cir.1988) (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973)). "The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American Nat'l Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1536 (11th Cir.1983). We find Diamond's reliance on this concept to be unavailing for several reasons.

Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law. *Chrysler Credit Corp.,* 842 F.2d at 1261; *City of Miami Beach v. Smith,* 551 F.2d 1370, 1377 n. 12 (5th Cir.1977). Diamond has not cited any Georgia law in support of its contention that the doctrine has relevance here. It appears from our independent research that the Georgia courts have not expressly sanctioned this method of issue preclusion. *See, e.g., Southmark Corp. v. Trotter, Smith & Jacobs,* 212 Ga.App. 454, 442 S.E.2d 265, 266 (1994) (cautioning "as to the semantical dangers which surround the term "judicial estoppel' and similar matters of issue preclusion" and stating that the federal common law concept of judicial estoppel used to preclude a party from asserting a position inconsistent with one successfully maintained in a prior judicial proceeding "has no exact equivalent under Georgia law"), *cert. denied,* 1994 Ga. LEXIS 702 (Ga. May 5, 1994). It is even less certain that the Georgia courts would embrace this notion under the particular facts of this case in

which the prior proceeding ended in a settlement. *See Konstantinidis v. Chen,* 626 F.2d 933, 939 (D.C.Cir.1980) (declining to apply judicial estoppel under District of Columbia law because "[a] settlement neither requires nor implies any judicial endorsement of either party's claims or theories").

We need not decide, however, whether OAA should be judicially estopped from denying that Diamond was damaged by Topps' conduct. The burden was on Diamond to prove how and to what extent it was injured by Topps' distribution of the Garbage Pail Kids stickers. Diamond could do this by (1) showing that Topps appropriated its exclusive license, or (2) establishing that it was harmed by Topps's activities even absent such appropriation. Diamond failed on both counts.

We find no error in the district court's determination that the licensing agreement between Diamond and OAA extended only to those items listed in Schedule "B" and that Topps, on account of this, did not invade Diamond's exclusive domain. In Georgia,

> [t]he cardinal rule in the construction of contracts is to ascertain the intention of the parties. The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained *will prevail over all other considerations,* in determining the nature of the agreement. The question remaining is whether (the language) of the contract creates an ambiguity which may be explained by parol [evidence]. A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. *Language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances.* Where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.

*Race, Inc. v. Wade Leasing, Inc.,* 201 Ga.App. 340, 411 S.E.2d 56, 57 (1991) (quotation marks and citations omitted) (parentheses and

emphasis in the original).

The agreement here plainly states that Diamond's license covers the articles specified in Schedule "B." Schedule "B" lists four types of stickers and two types of sticker books, neither of which encompass the sticker type of bubble gum trading card marketed by Topps. In view of the contract's unambiguous terminology, Diamond's contentions regarding the parties' course of dealings are irrelevant.

Because there was no invasion of Diamond's exclusive license, it could recover a portion of the settlement proceeds only by showing actual injury unrelated to appropriation as a result of Topps' activities. To do so, it necessarily was required to show some relationship between the distribution of Topps' Garbage Pail Kids stickers and lost sales of its Cabbage Patch Kids products. The district court's conclusion that there was no such correlation is a finding of fact subject to the clearly erroneous standard of review. *Taylor Rental Corp. v. J.I. Case Co.,* 749 F.2d 1526, 1530 (11th Cir.1985) (appellate court reviews district court's determination of damages for clear error).

The only evidence Diamond proffered on the subject of damages was the testimony of Weston Anson, an expert in the licensing industry. He postulated that Topps distributed the Garbage Pail Kids merchandise pursuant to a de facto sublicense of Diamond's exclusive license covering the whole category of stickers. He contended, therefore, that Diamond was entitled to sublicensing royalties, which he stated are generally split equally between the licensor and the licensee. This theory of damages is completely

dependent upon a finding that Diamond's license extended to the entire category of stickers, which we have determined was not the case. Diamond produced *no* evidence of actual harm. The district court's finding on the issue of damages is not clearly erroneous.

III. CONCLUSION

For the reasons stated herein, we hold that the district court did not err in deciding the merits of this case favorably to OAA and, accordingly, AFFIRM the court's judgment.