[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12110
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00149-WTH-PRL


FRANCISCO ESTRADA,

Plaintiff-Appellant,

versus

DENIS STEWART,
M.D. individually and in their official capacities, et al.,

Defendants,


D. MONTALVO,
M.D. individually and in their official capacities,
ROBERT CARVER,
M.D. individually and in their official capacities,
E. J. CHIPI,
M.L.P. individually and in their official capacities,
HELEN FLAGG,
R.N. individually and in their official capacities,
D. B. DREW,
Warden, individually and in their official capacities, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 14, 2017)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Francisco Estrada is a federal inmate who was incarcerated at the Federal Correctional Complex, Coleman during the period relevant to this appeal. He suffers from numerous medical conditions, including hepatitis C and gout. Proceeding pro se, he filed a lawsuit against members of Coleman's medical staff and two prison administrators, alleging that they acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The district court dismissed his fifth amended complaint with prejudice. This is his appeal.

I.

"Because this is an appeal from a Federal Rule of Civil Procedure 12(b)(6) dismissal, we draw the facts from the [fifth] amended complaint, accepting those facts as true and construing them in the light most favorable to the plaintiff." Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1263 n.2 (11th Cir. 2012).

A.

2

While Estrada was incarcerated at Coleman, Robert Carver, a doctor there, instructed him to alternate between allopurinol and colchicine when he experienced gout attacks.  A few weeks later he suffered an attack and followed Carver's instructions.  After taking colchicine for several days, he started to experience swelling in his abdomen and left elbow.  He went to Gilbert Michel, another member of Coleman's medical staff, who prescribed him the antibiotic cephalexin.  Estrada's condition worsened, and he returned to Carver and "pleaded with [him]" for help.  He alleges that Carver "ignored" his pleas, but he also states that the day after speaking with Carver he was taken to Pasco Regional Medical Center for a liver biopsy.

The doctor at Pasco botched the biopsy, leaving Estrada in even worse pain. And after he was transported back to his cell, Estrada started urinating blood. When his cellmate showed Helen Flagg, a registered nurse working at Coleman, Estrada's bloody urine, she gave Estrada "some medication" and told him "to make a sick call" the following day.

The next day another member of the Coleman medical staff, Eduardo Chipi, saw that Estrada was urinating blood and had him rushed to Leesburg Regional Medical Center.  There, he was diagnosed with internal bleeding, jaundice, and damage to his liver, gall bladder, and lungs.  A Leesburg doctor ordered a regimen of follow-up care, but Carver and Chipi did not follow those instructions when

3

Estrada returned to Coleman.  Instead, they provided only three days of pain medication "and then ignored Estrada's complaint of abdominal pains."

For the next year, from mid-2011 to mid-2012, Estrada repeatedly requested medical care for gout attacks and abdominal pain.  He states that Carver and Chipi ignored him, as did Coleman's "medical administrator" D. Montalvo, but he also states that they prescribed him generic colchicine, which Estrada found ineffective.

Finally, about a year after the biopsy, the Coleman medical staff performed an ultrasound and discovered a gallstone in Estrada's abdomen.  They prescribed him probenecid, which immediately relieved his gout symptoms and lessened his pain.  Still, Estrada's liver pain "continue[d] to disrupt his life."  And the medical staff did not remove the gallstone, even though Chipi told him they would.

In addition, Estrada alleges that he obtained (through a public records request) medical records that purport to show that he received care from Flagg and Chipi that he never, in reality, received.  Estrada complained to Coleman's then-warden, D.B. Drew, that the staff was fabricating records.  Drew promised to investigate, but he did not.

### B.

Estrada brought this lawsuit, asserting claims for negligence, "deprivation of constitutional rights [and] privileges," and intentional infliction of emotional

4

distress.[1]  After he amended his complaint twice, the defendants moved to dismiss his second amended complaint.  The district court denied in part that motion, finding that Estrada had stated a claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), for a violation of his Eighth Amendment right to be free from cruel and unusual punishment.

Even though his second amended complaint survived that motion to dismiss, Estrada filed a third and then a fourth amended complaint.  He also repeatedly filed motions for the appointment of counsel, all of which were denied.

After Estrada had filed his fourth amended complaint, and numerous motions had been filed by all parties, the district court issued an "order on pending motions."  The court stated that "[f]or purposes of judicial economy and to hopefully provide a more coherent record for potential appeal," it was necessary to "start this case off with a clean slate by way of repleading."  The court required Estrada to file a fifth amended complaint that would not contain any new claims or defendants.  Estrada did so, re-asserting his Bivens claims, and the defendants moved to dismiss his fifth amended complaint under Federal Rule of Civil

---

[1] Estrada originally named as defendants several persons who were not employees of the federal government.  Through the course of the litigation, the claims against those other defendants were eventually dismissed, and those persons are not parties to this appeal.

5

Procedure 12(b)(6).  The district court granted the defendants' motion, dismissing the fifth amended complaint with prejudice.

## II.

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim . . . ."  Butler, 685 F.3d at 1265 (11th Cir. 2012).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id.  "[P]ro se pleadings," like Estrada's, "are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally."  Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

Before reaching the substance of Estrada's claims, we briefly address his contention that the district court should have denied the defendants' motion to dismiss his fifth amended complaint because it had previously denied in part their motion to dismiss his second amended complaint.  "[A] court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court."  Aldana v. Del Monte Fresh Produce N.A, Inc., 578 F.3d 1283, 1288–89 (11th Cir. 2009).  As such, if a final judgment has not been issued in a case, an earlier ruling is not binding on the district court.  Id.  Until the district court's dismissal of the fifth amended complaint, it had not issued a final judgment

6

and the case was still properly within its jurisdiction.  As a result, its decision with respect to the second amended complaint did not bind it, and it was free to come to a different conclusion with respect to the fifth amended complaint.

## A.

The fifth amended complaint asserted Bivens Eighth Amendment claims against four members of Coleman's medical staff:  Carver, Michel, Chipi, and Flagg.  "It is well settled that the deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment."  McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (quotation marks omitted).  To prove that prison officials acted with deliberate indifference, the plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Id. at 1255.

"[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).  "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  McElligott, 182 F.3d at 1254.  And the fact that a prisoner "may have desired different modes of treatment" does not "amount to deliberate indifference."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

7

At the same time, "prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F.3d at 1257.

The claims against Michel and Flagg were properly dismissed. Taking Estrada's allegations as true, the care that those defendants provided was not perfect. But, at most, it amounted to medical negligence, which is not sufficient to rise to the level of deliberate indifference. See id. at 1254.

The claims against Carver and Chipi, however, are another matter. In the McElligott case the plaintiff presented evidence that he had suffered excruciating pain, nausea, weight loss, and vomiting. Id. at 1252–53. For about six months he had repeatedly requested medical attention, but his requests either were ignored or the defendant doctor prescribed only an anti-gas medication that had proven ineffective. Id. The doctor eventually prescribed another stomach medication, which did not improve the plaintiff's condition. Id. at 1253. Days after being released from prison the plaintiff discovered the true cause of his symptoms when he was diagnosed with terminal colon cancer. Id. at 1254.

The district court granted summary judgment to the doctor in McElligott, and this Court reversed. Id. 1256–57. We noted that the failure to diagnose the plaintiff's colon cancer exhibited negligence, not deliberate indifference, and

8

therefore the failure to diagnose could not sustain the plaintiff's Eighth Amendment claim.  Id. at 1256.  But summary judgment was nonetheless inappropriate because, considering that "[o]ther than tylenol and pepto-bismol, the main medication [the plaintiff] received was an anti-gas medication," a jury reasonably could have found "that the medication provided to [him] was so cursory as to amount to no care at all."  Id. at 1257.  Because the doctor "knew the extent of [the plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [his] condition," the plaintiff had created a genuine issue of material fact about whether the doctor was deliberately indifferent to his serious medical needs.  Id. at 1257–58.

Here, Estrada alleged that after the botched biopsy he was diagnosed with internal bleeding and other serious medical problems and that he was in extreme pain, yet the defendants provided only three days of pain medication when he returned to Coleman.  And he alleged that for the next year he "repeatedly submitted requests for medical attention" and "was ignored" by Carver, Chipi, and Montalvo.[2]  Their only course of action for that year was to prescribe generic colchicine, which had proved ineffective at treating his underlying condition or relieving his pain.  When those defendants did finally change course — by

---

[2] Estrada's claim against Montalvo is based on a theory of supervisory liability, and we will address it in the next section of this opinion.

9

conducting an ultrasound and prescribing probenecid — Estrada's condition improved "immediately."

Some delay in finding an effective treatment for a prisoner patient is not an Eighth Amendment violation.  Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003).  But Estrada's allegations amount to a claim that, like the doctor in McElligott, Carver and Chipi "knew the extent of [Estrada's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [his] condition" for a prolonged period of time.  182 F.3d at 1257–58.  As a result, Estrada stated a plausible claim about whether Carver and Chipi were deliberately indifferent to his serious medical needs.  See id.

B.

The fifth amended complaint also asserted Eighth Amendment claims against Montalvo and Drew on a theory of supervisory liability.  "Supervisory liability [under Bivens] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (alteration in original).

Estrada alleged that he repeatedly requested medical care from Montalvo in addition to Carver and Chipi.  It is not clear from the fifth amended complaint whether Montalvo was in a position to directly assist Estrada, or if he was merely a

higher-level administrator. However, reading the pleading liberally, as we must, Estrada has alleged that Montalvo knew about Estrada's serious medical need for an entire year and refused to help him. Put another way, Montalvo personally "knew the extent of [Estrada's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [his] condition." See McElligott, 182 F.3d at 1257–58. As a result, Estrada has stated a claim against Montalvo. See Gonzalez, 325 F.3d at 1234.

As for Drew, he allegedly told Estrada that he would investigate the fabrication of medical records, but he never did so. While fabricating records is wrongful, Estrada did not allege that the fabricating contributed to the defendants' "failing to provide care, delaying care, or providing grossly inadequate care." See McElligott, 182 F.3d at 1257. As such, Estrada has not alleged that Drew "personally participate[d] in" or was "causal[ly] connect[ed]" to a constitutional violation, and the claim against Drew was properly dismissed. See Gonzalez, 325 F.3d at 1234.[3]

---

[3] Because it ruled that Estrada's allegations did not amount to a constitutional violation, the district court did not reach the question of whether any constitutional right that was allegedly violated was "clearly established" at the time of the alleged violation, such that qualified immunity would preclude liability. See Mullenix v. Luna, 577 U.S. __, 136 S. Ct. 305, 308 (2015). And in their briefs to this Court the parties do not discuss whether McElligott or any other decision by this Court, the United States Supreme Court, or the Florida Supreme Court "clearly established" that the alleged conduct violated Estrada's constitutional rights. See Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 953 (11th Cir. 2003). As a result, we will leave that issue to be decided by the district court in the first instance, if the remaining

III.

Estrada appears to contend that the district court should have allowed him to amend his complaint for a sixth time to correct any deficiencies. "[W]e review a district court's denial of a motion to amend only for abuse of discretion . . . ." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). "Leave to amend a complaint is futile" — and thus properly denied — "when the complaint as amended would still be properly dismissed . . . ." Id. By the time his case was dismissed with prejudice, the district court had provided him with five attempts, after his initial complaint failed, to successfully state a claim. And Estrada did not identify in the district court (or in his brief to this Court) how he would have drafted his next amended complaint such that the claims properly dismissed this time would survive the next motion to dismiss. In light of that, it was not an abuse of discretion for the district court to conclude that it would be futile for Estrada to amend his complaint a sixth time.

IV.

Estrada also contends that the district court erred in denying his motion for the appointment of counsel. We "review a district court's decision not to appoint counsel for abuse of discretion." Smith v. Sch. Bd., 487 F.3d 1361, 1365 (11th Cir. 2007). "Appointment of counsel in a civil case is not a constitutional right. It

---

defendants — Carver, Chipi, and Montalvo — wish to press it. See Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc., 911 F.2d 1548, 1550 n.3 (11th Cir. 1990).

12

is a privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990).

Estrada's case is straightforward:  he claims that the medical care he received was so inadequate that it violated the well-established standards of the Eighth Amendment.  The case is not "novel or complex," and it was not an abuse of discretion for the district court to deny his motions for the appointment of counsel.

V.

Accordingly, we affirm the dismissal with prejudice of the claims against Michel, Flagg, and Drew.  But we reverse the dismissal of the claims against Carver, Chipi, and Montalvo, and remand the case to the district court.[4]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[4] We do not consider Estrada's contention that he was denied "effective discovery."  The district court's Rule 12(b)(6) ruling was based solely on his pleadings, and evidence adduced through discovery would have had no effect on the ruling.  See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997).